YADKIN RIVER POWER COMPANY v. J. H. WISSLER ET ALS.

(Filed 13 November, 1912.)

1. Electric Corporations — Eminent Domain—Several Exercises of Power—Interpretation of Statutes.

The power of eminent domain conferred on electric public-service corporations by the statutes, Revisal, secs. 1570-7 inclusive, and sec. 2575 *et seq.*, is not necessarily exhausted by a single exercise of the power, but, within the limits established by the general law or special charter, a subsequent or further exercise of the power may be permissible.

2. Electric Corporations — Eminent Domain — "Reasonable Necessity"—Bad Faith—Oppression—Power of Courts—Interpretation of Statutes.

While any person affected by a petition of an electric public-service corporation in condemnation proceedings may "answer the petition and show cause against granting the same, and may disprove any of the facts alleged in it" (Revisal, sec. 2584), and while the rights, privileges, and easements to be acquired by such companies must be "reasonably necessary" for the conduct of their business, and this reasonable necessity may in its ultimate phases become a judicial question, a perusal of the entire

statute discloses that the extent and limit of the rights to be acquired are primarily and very largely referred to the companies or grantees of the power, and only becomes an issuable question, usually determinable by the court, on allegation of fact tending to show bad faith on the part of the companies or an oppressive or manifest abuse of their discretion. *Love v. R. R.,* 81 N. C., 434, cited and distinguished.

3. Corporations—Rights of Way—Definition—Surface Boundaries— Obstructions — Preservation of Lines — Interpretation of Statutes.

While ordinarily and in its proper acceptation the "right of way" is understood to be an easement in the lands of another attaching to some specific portion of the lands, defined and ascertainable by specific surface boundaries, the doctrine may not be so limited under the construction of the provisions of our statutes applicable to electric public-service corporations as to confine them to a right of way delimited by surface boundaries, and it may be extended to the cutting or removal of trees or obstructions outside of the boundaries when required for the reasonable preservation and protection of their lines and other property. Revisal, secs. 1572, 1574, 2575, 2576.

APPEAL by plaintiff from *Peebles, J.,* at July Term, 1912, of LEE.

Petition to condemn a further right or privilege in defendants' land, heard on appeal from clerk of Superior Court.

The petition filed before the clerk in due form and properly served on the parties is as follows:

"This, the petition of the Yadkin River Power Company, respectfully showeth:

"1. That the petitioner is a public-service corporation, duly chartered and incorporated under the laws of North Carolina, and, as such, possesses the power and right to construct lines for the transmission of electricity for power or light, and either or both of said purposes, and for other purposes specified in its charter, together with the right to maintain and operate such lines during its corporate existence; and that it possesses the right of eminent domain under the laws of this State to enable it to locate, build, protect, maintain, and operate its said lines.

"2. That it has built and completed the construction of a line of towers and wires for the purpose of transmitting electricity

for light and power and other purposes permitted by its charter, and over and across the lands of the defendants herein.

"3. That your petitioner has acquired from the defendants the right, privilege, and easement of building and maintaining its said line across said lands, upon a right of way 100 feet in width, 50 feet on each side of the center of the power line thereon constructed, and has secured said privileges from defendants under and by virtue of condemnation proceedings instituted in the Superior Court of Lee County, North Carolina.

"4. That there is now standing upon the lands of said defendants, within 100 feet of the lines of said right of way and on both sides thereof, certain trees which, on account of their height and proximity to said power line, are a constant menace and source of danger to said line and the safe operation thereof.

"5. That said trees are marked with blazes recently made thereon, so as to be easily identified, being 185 in number, more or less.

"6. That it is necessary, for the protection, maintenance, and safe and prudent operation of said power line, and for the protection of the public, to have the privilege of cutting said trees, and your petitioner has endeavored to acquire from the defendants, by agreement, the right and privilege of cutting said danger trees on both sides of the right of way and easement of petitioner across said lands, but has not been able to do so, and has failed to secure said right or privilege because of the exorbitant price demanded therefor by defendants, and it is necessary to have the privilege and right of cutting said trees valued in accordance with chapter 32, Revisal of 1905; and your petitioner institutes this proceeding for the purpose of obtaining such privilege and of having defendants' compensation for cutting said danger trees fixed.

"7. That petitioner has given security for the costs of this proceeding in accordance with section 1574 of said Revisal.

"8. That the lands of the defendants, over which petitioner has acquired the right of way and easement as aforesaid, and from which it desires to cut the danger trees hereinbefore described, lie in Deep River Township, Lee County, and are described and defined as follows: Known as the Wissler and Bor-

den lands, formerly known as the William H. Jones lands, lying in Deep River Township, Lee County, North Carolina, adjoining the lands of M. Rosser, Lizzie Woodell, and others, and particularly defined and described upon the plat hereto annexed and made a part hereof, and the said easement or right of way across said lands, together with the danger trees your petitioner desires cut, are fully described and located on said plat hereto attached.

"9. That the petitioner desires only to cut the danger trees on both sides of the easement and right of way across said lands and along the line marked out and located as aforesaid, for the purpose of protecting its said line for transmitting electricity; and, except for cutting said danger trees, the petitioner is not to interfere with the rights of the defendants, and the defendants shall have full power and a right to use the lands from which the said danger trees shall be condemned for any and all purposes not inconsistent with the right and privilege of cutting said danger trees.

"10. That the owners of the land from which the above described trees are to be cut, and their residences, as far as known, are as follows: Mrs. Minnie Wissler, Chatham County, N. C.; Mrs. Sallie J. Borden, Wayne County, N. C.

"Wherefore the petitioner respectfully prays:

"1. That this court make an order for the appointment of three competent and disinterested freeholders, residing in this county, whose duty it shall be to appraise the value of the right and privilege to cut said danger trees from the lands of the defendant hereinbefore described, and that the court fix a time and place for the first meeting of said commissioners.

"2. For the decree declaring the petitioner entitled to the right and privilege of cutting said danger trees upon the lands aforesaid, upon the payment of just compensation therefor, to be fixed by the commissioners in accordance with law.

"3. For such other and further relief as to the court may seem just."

Defendants entered the following demurrer:

"1. The petition does not state a cause of action.

"2. The court is without power to grant the relief prayed for, or any relief, upon the facts set up in the petition.

"3. The petition does not confer any jurisdiction upon the court, and the court is without jurisdiction in the premises.

"4. Right sought to be acquired by the plaintiff, and the land, right or easement sought to be effected, is not sufficiently described."

On the hearing before the clerk there was judgment sustaining demurrer, for that "plaintiff has no right to the relief prayed for in its petition, and there is no jurisdiction in the court to grant the same."

This ruling was affirmed on appeal, and the Superior Court having entered judgment sustaining the demurrer and that defendants go without day, plaintiff excepted and appealed.

*McIver & Williams for plaintiff.*
*A. A. F. Seawell for defendant.*

HOKE, J. The power of eminent domain has been expressly conferred by statute on these electric companies which have dedicated their property to the public service. Revisal, secs. 1571-77 inclusive, and sec. 2575 *et seq.,* and this legislation has been sustained as applying to plaintiff company in *Wissler v. Power Co.,* 158 N. C., 465. The authorities also very generally hold that the right is not necessarily exhausted by a single exercise of the power, but, within the limits established by the general law or special charter, a subsequent or further exercise of the power may be permissible. *Hopkins v. R. R.,* 94 Md., 257; *Gardner v. R. R.,* 117 Ga., pp. 522, 527; *R. R. v. Wilson,* 17 Ill., 123; 15 Cyc., p. 576. A principle fully recognized by this Court in *R. R. v. Olive,* 142 N. C., 257, and *Thomason v. R. R.,* 142 N. C., 318.

The power granted to this and other companies of like kind having been expressed in very general terms, they can only acquire by condemnation such "rights, privileges, and easements" as may be reasonably necessary to carry on and effect the *bona fide* purposes of the enterprise, and while section 2584 of the act provides that any person whose rights are affected may "answer the petition and show cause against granting the

same, and may disprove any of the facts alleged in it," and while this "reasonable necessity" may in its ultimate phases become a judicial question, a perusal of the entire statute will clearly disclose that the extent and limit of the rights to be acquired are primarily and very largely referred to the companies or grantees of the power, and only becomes an issuable question, usually determinable by the court, on allegation of fact tending to show bad faith on the part of the companies or an oppressive or manifest abuse of their discretion—a position which presents the most feasible method of dealing with the subject, and in our opinion accords with the better considered cases. *Durham v. Riggsbee,* 141 N. C., 128; *In re N. Y. v. Hudson River R. R.,* 77 N. Y., 248; *N. Y. Central v. Metre Gas Agent,* 63 N. Y., 326; *R. R. v. Telegraph Co.,* 30 Col., 133; *R. R. v. Spier,* 56 Pa. St., 325; *Wheeling R. R. v. Toledo R. R.,* 72 Ohio St., 368; *Telegraph Co. v. Oregon Short Line,* 23 Utah, 474; *In re N. Y. and Harlem R. R.,* 46 N. Y., 546; *North Mo. R. R. v. Gott,* 25 Mo., 540; 2 Lewis Eminent Domain (3d Ed.), sec. 601; 15 Cyc., p. 637; *Biddle v. Water Co.,* 190 Pa. St., 194.

It is true that in *Love v. R. R.,* 81 N. C., 434, the Court said that both the value and extent of the right of way in proceedings of this character should be referred to the commissioners, but an examination of the case will disclose that the special statute considered on that appeal expressly provided that the "quantity as well as the value of the easement should be determined by the commissioners," and accordingly, in a subsequent case, *R. R. v. R. R.,* 104 N. C., pp. 658-665, decided intimation is given that the principle did not apply to the acquisition of a right of way under the provisions of the general law.

The extended discretion accorded to public-service corporations by this interpretation of the statute does not, in our opinion, afford just ground for apprehension that the rights obtainable will be greatly abused, for it must be remembered, as suggested in some of the cases, that the ordinary uses of that portion of the right of way not actually required for the needs of the company remain with the owner, and the amount of compensation to be made; dependent as it is largely on the width of the right of way and the extent of the easement, will act in

wholesome restraint of any disposition to seek more than is actually required. A contrary position, too, would be to seriously embarrass and at times threaten the success of enterprises giving promise of great benefit to the communities affected.

Ordinarily and in its proper acceptation, the term "right of way" is understood to be an easement in the lands of another attaching to some specific portion of the land, defined and ascertainable by specific surface boundaries (*Joy v. City of St. Louis*, 138 U. S., 44; *R. R. v. Paddock*, 75 Ill., 616); but our statute applicable to these companies in question is much broader in its scope and terms and must be given a more extended meaning.

Thus in section 1572, Revisal, they are authorized to "treat with the owner of any lands over which their lines are proposed to be erected for a right of way for planting, repairing, and *preservation* of their poles or other property."

Under section 1574, the proceedings for condemnation must set forth the "use, easement, privilege, or other right claimed by the company." In section 2575, also made applicable to these companies, it is provided "that such company may at any time enter upon the lands through which they may desire to conduct their lines," etc. . . . "lay out the same as they may desire, and may also enter on such contiguous lands along the route as may be necessary for depots, warehouses, etc., and other buildings required for the accommodation of their offices, servants," *and* for the "protection of their property."

Again, in section 2576, it is enacted: "For the purpose of constructing its works and necessary appurtenances thereto, or of repairing them after they shall have been made, or of enlarging or otherwise altering them, the company may, at any time, enter on any adjacent lands, and cut, dig, and take therefrom any wood, stone, gravel, or earth which may be deemed necessary: *Provided,* that they shall not, without the consent of the owner, destroy or injure any ornamental or fruit trees."

From these and other portions of the act it appears that the power of condemnation granted to these companies is not confined to a right of way, delimited by surface boundaries, but may be extended to cutting of trees or removing obstructions

outside of these boundaries when required for the reasonable preservation and protection of their lines and other property.

The terms, rights, and privileges used in our statute are broad enough to include the right sought in the present petition (6 Words and Phrases, p. 5583), and in view of the positions stated, sustained as they are in reason and authority, we are of opinion that the petitioner on the facts as they now appear should be allowed to condemn the right to cut these trees, paying for this right and privilege, as in other cases, the value of the trees cut and the damage done to the land by reason of cutting the same. *McLean v. R. R.,* 158 N. C., 498; 74 S. and E., p. 461.

There is error, and this will be certified, that further proceedings may be had in accordance with the opinion.

Reversed.