HAROLD W. WELLS, A RESIDENT AND TAXPAYER OF THE CITY OF WIL-MINGTON, NORTH CAROLINA, SUING FOR HIMSELF AND IN BEHALF OF ALL OTHER TAXPAYERS SIMILARLY SITUATED WHO DESIRE TO COME IN, MAKE THEMSELVES PARTIES TO THIS CAUSE AND CONTRIBUTE TO THE COST THEREOF, v. HOUSING AUTHORITY OF THE CITY OF WILMINGTON, NORTH CAROLINA, AND THE CITY OF WILMINGTON, NORTH CARO-LINA.

(Filed 15 June, 1938.)

1. Municipal Corporations § 1—

What is a "public purpose" for which the General Assembly may create a municipal corporation is a question for the courts to determine upon the basis of the end sought to- be reached and the means used, rather than statutory declarations.

2. Same—

The necessity of bringing the government closer to the people in congested areas progressively demands, in order to meet new conditions, further refinement and subdivision in the instrumentalities of government.

3. Same—

The ownership of the instrumentalities by which its purpose is to be served does not detract from the public or municipal character of the agency employed.

4. Same—The establishment of housing authorities under ch. 456, Public Laws of 1935, is for a public purpose.

"Slum clearance" to rehabilitate crowded and congested areas in cities and towns where conditions conducive to disease and public disorder exist, is a public purpose, for which the Legislature may create municipal corporations, and housing authorities established under ch. 456, Public Laws of 1935, are for such governmental purpose.

5. Constitutional Law § 4—Our State Constitution is a limitation of powers.

Our State Constitution does not attempt to define the field of governmental authority, but is a limitation of powers, within which limitations

the General Assembly, as representative of the people, may act, and an attempt by the Legislature to assert those powers must be liberally construed.

**6. Constitutional Law § 6b—**

The courts will not declare an act of the General Assembly unconstitutional where there is reasonable doubt.

**7. Municipal Corporations § 1—Term "municipal corporation" should be liberally construed.**

The term "municipal corporation" should not be construed narrowly to include only cities, towns, counties and school districts, as the Constitution contemplates a broader construction of the term, Art. VII, Art. VIII, sec. 1, and in its broader sense the term includes all public corporations exercising governmental functions within the constitutional limitations.

**8. Same—Housing authority created under ch. 456, Public Laws of 1935, is a municipal corporation.**

A housing authority created under ch. 456, Public Laws of 1935, is for a public governmental purpose, and is given powers greatly in excess of those which might be given any private enterprise, including many powers not dissimilar to those exercised by cities and towns in regard to zoning, streets and sidewalks, and eminent domain, Michie's Code, 6243 (9), and such authority has all substantial *indicia* of a public corporation in the powers granted, method of its creation, sec. 6243 (4), appointment and terms of its membership and provisions to prevent fraudulent practices on their part and for removal for misconduct, sec. 6243 (5), (7), (8), and such authority is a municipal corporation within the contemplation of the Constitution.

**9. Constitutional Law § 4—**

The method for selecting membership of a housing authority created under ch. 456, Public Laws of 1935, does not constitute an unconstitutional delegation of authority.

**10. Taxation § 19—**

Since a housing authority created under ch. 456, Public Laws of 1935, is a municipal corporation created for a public, governmental purpose, its property is exempt from State, county and municipal taxation.

**11. Municipal Corporations § 24—City or town may convey property to housing authority within its territory.**

The power of a city or town to convey land is governed by statute, and by express terms of sec. 3, ch. 408, Public Laws of 1935, a municipal corporation is given authority to convey land to a housing authority within its territory with or without monetary consideration in consideration of the benefit to be received by the city or town from the activities of the municipal housing authority.

**12. Taxation § 9—City is not liable on bonds of housing authority.**

A city or town is not liable on the bonds of a housing authority within its territory, it being expressly provided that neither the State, nor the city or town shall be liable, sec. 14 (b), ch. 456, Public Laws of 1935, and the authority not being an agency of the city or town so as to contravene this express statutory provision.

PLAINTIFF appealed from *Sinclair, J.,* at May Term, 1938, of NEW HANOVER. Affirmed.

In his complaint, plaintiff admitted compliance with the procedure laid down in the Housing Authorities Act and the organization of the Commission itself. He alleges, however, that the act is unconstitutional, in that it comprehends no public purpose, and that the agency set up under it is not a municipal corporation within the meaning of the Constitution, but a corporation merely for private gain, engaged in a private enterprise; that its incorporation in the manner set out in the statute was unconstitutional; that the city of Wilmington cannot, under authority of chapter 408, Public Laws of 1935, convey to the Housing Authority any of its property with or without consideration. That the Housing Authority is an agent of the city of Wilmington and the city will be responsible for its bonds and other obligations. That defendant Wilmington Housing Authority has represented that its property will be exempt from taxation and has arranged to borrow about $700,000, and build apartments and dwellings for rent, and the city intends to make to it conveyances and donations of city property; that carrying into effect the scheme proposed will destroy the value of real estate in the city and take the property of plaintiff without due process of law, and do irreparable injury to plaintiff and other taxpayers like situated.

Plaintiff asked for a permanent injunction to restrain defendants from proceeding under the cited laws.

The answer denies the parts of the complaint alleging unconstitutionality in the Housing Authorities Act and in the operation of chapter 408, Public Laws of 1935, and avers that defendant Housing Authority is a municipal corporation under the Constitution; that its property will be free from taxation by the State, county, and municipalities; that it is an independent municipality and the city of Wilmington will not be liable for its obligations.

Upon the hearing, Sinclair, Judge, found all the facts and legal inferences in favor of the defendants and dismissed the action, and plaintiff appealed.

*Aaron Goldberg for plaintiff, appellant.*
*William B. Campbell and Alan A. Marshall for defendants, appellees.*

SEAWELL, J. The plaintiff contends that chapter 456 of the Public Laws of 1935, known as the Housing Authorities Act of 1935, is unconstitutional, since the purposes sought to be accomplished by the act are not of a public nature, that the body created under it has not been given any governmental function and is not a municipal corporation; that the city of Wilmington is without power to convey any of its property to this corporation, and that the property, in the hands of the corporation, if conveyed, would not be exempt from taxation.

These contentions are somewhat sketchily supported by argument and citations in the brief, and counsel for plaintiff made no oral argument. Perhaps, as sometimes happens in "friendly suits," his function in this case is similar to that of the "devil's advocate" at the canonization of a saint.   But the decision of the case will have an effect beyond the immediate litigation, and the matters involved must have that careful consideration their importance demands.

Is the act under consideration constitutionally valid, and is the agency set up for its administration a municipal corporation within the meaning of the Constitution?

The case of *Webb v. Port Commission,* 205 N. C., 663, is very similar to the case at bar, and must be considered as decisive of most of the questions raised, but there is a difference in the declared purpose of the two acts which merits attention.

The court accepted without question that the purpose of the Port Commission Act was public in its nature and a proper subject for the exercise of governmental power, stating the proposition as follows: ".   .   .   the Port Commission of Morehead City is not a private or business corporation, but is a public corporation created by the General Assembly as an agency of the State, *to perform a well recognized governmental function, to wit: to provide facilities for the transportation of goods, wares, and merchandise, both into and out of the State by means of carriers over land and water."   Webb v. Port Commission, supra.*

The purpose of the Housing Authorities Act is to accomplish "slum clearance"—to rehabilitate crowded and congested areas in cities and towns where insanitary and other conditions exist conducive to disease and public disorder, menacing the safety and welfare of society.   In this the plaintiff insists there is no public purpose justifying the exercise of the governmental function.

Our attention is directed to the fact that in the statute the Housing Authority is declared to be "a public body and body corporate and politic, exercising public powers."   Ordinarily, courts will not permit a simple declaration of the Legislature to give a character to a body, or a transaction, which appears to be inconsistent with the facts of the case. In an analogous matter, the courts have declined to permit the Legislature to declare what is "a necessary purpose" under Article VII, section 7, of the Constitution, holding this to be a matter for the courts.   *Sing v. Charlotte, ante,* 60; *Glenn v. Commissioners,* 201 N. C., 233.

In the same manner the Court will determine what is a "public purpose," looking to the end sought to be reached and to the means to be used, rather than to statutory declarations to aid its decision.   *Webb v. Port Commission, supra.*

The powers given to the agency created under the Housing Authorities Act are not dissimilar to those given to towns and cities in the Constitu-

tion and laws, particularly chapter 56 of the Consolidated Statutes, relating to municipal corporations. Under the powers given such municipal corporations to enact ordinances for the welfare and safety of their inhabitants, a town, within reasonable limitations, may zone its territory and designate what areas may be devoted to business and what to residence; where noisome or offensive occupations may be carried on and where they may not; may close places where practices are carried on in violation of law; may designate what kind of buildings may be erected in given localities; and, generally, may regulate numerous matters where necessary to the public welfare or safety. Any or all of these powers might be vested in a separate municipal authority, if convenience required, without offending against any constitutional principle of which we are aware.

The same necessity that prompted the subdivision of political authority, in the creation of cities and towns, to the end that government should be brought closer to the people in congested areas, and thus be able to deal more directly with problems of health, safety, police protection, and public convenience, progressively demands that government should be further refined and subdivided, within the limits of its general powers and purposes, to deal with new conditions, constantly appearing in sharper outline, where community initiative has failed and authority alone can prevail.

It is not questioned that it is a proper function of government to promote the health, safety, and morals of its citizens. The Housing Authorities Act depends for its validity, as a proper exercise of governmental authority, upon its declared objective in removing a serious menace to society, not disconnected with political exigency, in the populous areas to which it applies.

It differs in one particular from the usual type of municipality—the ownership of the instrumentalities by which the public purpose is to be served. But we cannot see that such ownership detracts from the public or municipal character of the agency employed. *Webb v. Port Commission, supra, p.* 673; *Willnon v. Powell,* 91 Cal. Ap., 266 P., 1029.

The State cannot enact laws, and cities and towns cannot pass effective ordinances, forbidding disease, vice, and crime to enter into the slums of overcrowded areas, there defeating every purpose for which civilized government exists, and spreading influences detrimental to law and order; but experience has shown that this result can be more effectively brought about by the removal of physical surroundings conducive to these conditions. This is the objective of the act, and these are the means by which it is intended to accomplish it.

The written Constitution has no direct pronouncement as to the scope of governmental authority—does not define the field in which it must be exercised. It is far from comprehensive of the governmental power of

the State. Our Constitution, as has been so frequently pointed out, is a constitution of limitations, where powers not surrendered expressly or by necessary implication are reserved to the people, to be exercised through their representatives in the General Assembly. *Yarborough v. Park Commission,* 196 N. C., 284, 291. An attempt by the Legislature to assert those powers must be treated liberally to effectuate its purpose. No matter from what source the power may be derived, the Court, by precedent at least, is not permitted to declare an act of the General Assembly void where there is reasonable doubt. *Coble v. Commissioners,* 184 N. C., 342; *Gunter v. Sanford,* 186 N. C., 452; *Webb v. Port Commission, supra,* 677.

If, then, the act comprehends a public purpose, the agency created under it falls within the authority of *Webb v. Port Commission, supra.* While the term "municipal corporation" is not directly applied by the Court to the Port Commission in that case, it is very clear that the Court meant to include it within that term as used in the Constitution. This is the interpretation put on the opinion of the Court in a strong dissenting opinion written by *Justice Brogden,* at page 687. Indeed, the Court could not have arrived at its conclusion without so holding.

In the *Port Commission case,* there is set up an extensive parallel between the powers and functions and corporate incidents of the Port Commission on the one hand and the elements of an approved definition of a public corporation on the other, and in the light of that comparison the constitutionality of the act was sustained. We can find no substantial *indicia* of a public corporation listed in that case that are not present in the act now under consideration, and in this respect we consider *Webb v. Port Commission, supra,* an authoritative precedent in the case at bar.

The act under which the Housing Authority is created provides for notice and hearing of its creation—sec. 6243 (4), Michie's Code of 1935 —and an investigation of the facts in order to ascertain whether or not the conditions exist under which the public authority may be exercised; the appointment of the membership of the authority under sec. 6243 (5), is made by the mayor of the town or city, and these members are given definite terms of 1, 2, 3, 4, and 5 years to begin with, with a following term of five years each, and there are provisions for filling vacancies. They are charged with the general duty of enforcing all the provisions of the Authorities Law, which are far from strictly proprietary in their character. Effective measures are taken under sec. 6243 (7), to prevent fraudulent practices or advancement of self-interest; members of the Commission are subject to removal for misconduct in office; sec. 6243 (8). Attention is directed to sec. 6243 (9), defining the powers of the "Authority." The paragraph is far too long to be quoted, but a reading of it assures us that powers exercised by this Authority are

more than those which might be given by the Legislature in aid of any private enterprise. They have to do with investigations and reports regarding conditions existing in any part of the territory within their jurisdiction, form practically a planning board to work in coöperation with the city or municipality, as to the installation, opening or closing of streets, roads, roadways, alleys, sidewalks or other places and facilities in connection with a project, and are authorized to acquire municipal property, to be devoted to the Housing Project; and to arrange with the city or municipality for zoning or rezoning any part of the city or municipality in aid of the project. It is further authorized to deal with the Federal Government with regard to projects; to issue bonds; to buy, lease, and construct buildings, with other powers incident to the legal ownership and control of the properties operated, not necessary to mention here. Under sec. 6243 (11), and sec. 6243 (38), and sec. 6243 (40), the Authority has the right to acquire property by eminent domain. Section references are to Michie's Code of 1935.

The selection of the membership on the board, in the manner provided in the act, does not constitute an unconstitutional delegation of authority.

In plaintiff's brief, Southern Assembly v. Palmer, 166 N. C., 75, is cited as authority for the position that the term "municipal corporation" in the Constitution must be confined to municipal corporations proper— so-called—as cities and towns, and to quasi-municipal corporations such as counties, school districts, etc. This case was strongly presented in Webb v. Port Commission, supra, and not found as authority for this position. The distinction was not necessary in the Southern Assembly case, since the Court was pointing out the difference between corporations created essentially for a private purpose and corporations created for a public purpose, holding that the Southern Assembly belonged to the former class and, therefore, was not entitled to the tax immunity afforded municipal corporations under the Constitution.

In Smith v. School Trustees, 141 N. C., 143, 150, in which the opinion was written by the same eminent jurist who wrote the opinion in Southern Assembly v. Palmer, supra, a broader significance is insisted upon and Currier v. District Township, 62 Iowa, 102, is quoted with approval as follows: "The word 'municipal,' as originally used in its strictness, applied to cities only, but the word now has a much more extended meaning, and when applied to corporations, the words 'political,' 'municipal,' and 'public' are used interchangeably."

In further support of this view, as pointed out in the same case, Article VII of the Constitution includes within the category of municipal corporations not only municipal corporations as cities, towns, and counties, but "other municipal corporations" as well. So, also, the title of Article VIII, section 1, which must be read into the text to give the intended classification significance, refers to "corporations other than municipal," thus classifying all public corporations as municipal.

Referring to Article V, section 5, of the Constitution, there is nothing in the context which suggests the necessity of a departure from the ordinary rule of construction requiring that the same meaning shall be given to a term wherever used in the same act, since all these provisions of the Constitution were enacted and adopted at the same time and are supposed to be interrelated.

But we need not become lost in a maze of definitions and lose the object of pursuit. The principle on which the exemption rests requires that we apply the broader interpretation of the term "municipal," as laid down in *Smith v. School Trustees, supra*. It was intended that the government in its public service should not be embarrassed or impeded by any duty levied upon the instruments used to carry its purposes into effect, and to give that intention effect the exemption must be extended to all municipal corporations without legalistic distinction.

Applying again the principle that courts may not declare an act of the Legislature unconstitutional in a case of doubt, we find that the Housing Authorities Act under consideration is a constitutional exercise of a legislative power and that the agency therein set up is a municipal corporation within the meaning of the provisions of the Constitution which we have discussed. *Webb v. Port Commission, supra; Black v. Hirsh*, 256 U. S., 135; *New York City Housing Authority v. Mueller*, 1 N. E. (2), 153.

It follows as a corollary to this that the property of the Housing Authority is exempt from State, county, and municipal taxation. Under this decision, the property of the Housing Authority would be held for a public purpose.

Does the city of Wilmington have authority to convey to the Housing Authority its property, with or without consideration?

The powers of cities and towns in this respect are governed by statute. Chapter 408 of the Public Laws of 1935 was enacted to adjust the relationships and regulate the dealings between housing authorities and the municipalities to which their benefits may be, in part at least, extended. Section 3 of this chapter directly gives to cities and towns within the territory of the Housing Authority the power to convey or lease property to such Authority with or without consideration. We think the phrase "without consideration" must be taken to mean a consideration of monetary value. The Legislature had the right to consider the benefit received by the municipality in carrying out the purposes of the act as supplying such want of monetary consideration.

Will the city of Wilmington be liable for the payment of indebtedness and obligations of the Housing Authority?

There is an express provision to the contrary in section 14 (b) of the act, in which it is provided that neither the State nor the city or munici-

pality shall be liable. We find no implications of agency between the city and the Housing Authority which would contravene this express provision. *Williamson v. High Point, ante,* 96; *Brockenbrough v. Comrs. of Charlotte,* 134 N. C., 1.

For the reasons foregoing, the plaintiff is not entitled to injunctive relief, and the judgment of the court below is

Affirmed.