IN RE: HOUSING AUTHORITY OF THE CITY OF SALISBURY, NORTH CAROLINA, PROJECT NC-16-2

(Filed 30 April, 1952.)

**1. Municipal Corporations § 8d—**

The power of eminent domain has been delegated to commissioners of housing authorities. G.S. 157-11, G.S. 157-50, G.S. 40-37.

**2. Same: Eminent Domain § 4½ —**

The selection of a site for public housing rests in the broad discretion of a housing authority and its action in this regard may be challenged only by a charge of abuse of discretion, but allegations of arbitrary or capricious conduct are sufficient, it not being necessary to allege malice, fraud or bad faith.

**3. Municipal Corporations § 8d: Trial § 20—**

Even though the question of whether a housing authority acted arbitrarily or capriciously in the selection of a site may be a question of fact reviewable by the judge on appeal from the clerk, nevertheless the judge has the discretionary power to submit the question to a jury.

**4. Appeal and Error § 8—**

Where, in the trial, the contentions and exceptions of the parties relate solely to the form of the issue to be submitted to the jury, appellant may not contend on appeal that the matter involved a question of fact determinable by the judge alone and that the submission of any issue to the jury was error, since the appeal must follow the theory of trial in the lower court.

**5. Trial § 36—**

Where the issue submitted adequately presents the issuable question raised by the pleadings, an exception to the issue is without merit.

**6. Municipal Corporations § 8d: Eminent Domain § 4½—Evidence held sufficient to raise issue of whether housing authority acted arbitrarily and capriciously in selecting site for housing project.**

Evidence tending to show that a housing authority selected as a site for a public housing project a part of the campus of a college maintained by a religious organization with the aid of donations from individuals and charitable foundations, that the college was expanding, and that the site selected was within three hundred feet of a building already erected and constituted that part of the campus essentially necessary to care for ordinary expansion and development of the college in accordance with its general plan, *is held* sufficient to overcome the motion of the housing authority for a directed verdict and sustain the finding of the jury that the commissioners had acted arbitrarily and capriciously in selecting the site. "Arbitrary" and "capricious" defined.

**7. Same—**

Evidence of the availability of other suitable sites is relevant and competent upon the issue of whether a housing authority acted arbitrarily or capriciously in selecting the particular site objected to.

**8. Appeal and Error § 39e—**

The admission of evidence over objection is rendered harmless when similar testimony is admitted without objection.

**9. Municipal Corporations § 8d: Evidence § 7a—**

Ordinarily in civil matters the burden of proof is by the preponderance of the evidence or its greater weight, and the question of whether a housing authority acted arbitrarily or capriciously in selecting a site does not come within any of the exceptions to the general rule, and respondents have the burden of showing abuse of discretion by the greater weight of the evidence and not by clear, strong and convincing proof.

DENNY, J., took no part in the consideration or decision of this case.

ERVIN, J., concurring in the result.

IN RE HOUSING AUTHORITY.

APPEAL by petitioner, Housing Authority of the City of Salisbury, from *Sink, J.,* and a jury, November Term, 1951, of ROWAN.

Special proceeding to condemn a portion of the campus of Livingstone College as a site for the erection of a low-rent public housing project, heard below on the question whether the Commissioners of the Housing Authority acted arbitrarily or capriciously in selecting the campus site.

The proceeding was instituted under (1) the Public Works Eminent Domain Law, Chapter 470, Public Laws of 1935, as amended, now codified as Chapter 40, Article 3, of the General Statutes of North Carolina (G.S. 40-30 through 40-53); and (2) the Housing Authorities Law, Chapter 456, Public Laws of 1935, as amended, now codified as Chapter 157 of the General Statutes of North Carolina (G.S. 157-1 through 157-60).

The record stipulates compliance with all necessary jurisdictional requirements.

The petition filed by the Housing Authority with the Clerk of the Superior Court of Rowan County alleges it is necessary to condemn a specifically designated 7.25-acre portion of the Livingstone College campus within the corporate limits of the City of Salisbury as a site for the erection of a 72-unit low-rent public housing project.

The respondent, Livingstone College, by answer denies that the property sought to be condemned is necessary for a public housing project, and by further answer alleges that the College owns a large tract of farm land located some 300 yards west of the campus which would be suitable and convenient for the location of the proposed housing project, the whole or any part of which the College offers to sell at a reasonable price.

And by amendment to the answer the respondent further alleges that the action of the Housing Authority "in selecting and seeking to condemn a part of the campus of Livingstone College . . . is arbitrary, capricious and unreasonable in that it attempts to select a part of the campus of Livingstone College for a housing project, without consideration or regard for Livingstone College or for the further expansion program of Livingstone College as an educational institution, . . . and that the propriety of locating the . . . project on the campus of Livingstone College is unreasonable, unlawful, capricious and arbitrary, as the Housing Authority has other suitable sites available, not only within 300 yards of Livingstone College, but elsewhere in the City of Salisbury."

When the questions of fact raised by the pleadings came on for hearing before the Clerk of the Superior Court, he entered judgment finding that the campus site described in the petition is necessary for the housing project, and that the action of the Housing Authority in selecting the site was not arbitrary, capricious, or unreasonable, and thereupon decreed

that the Housing Authority "has the right to condemn the property described in the petition."

To the judgment of the Clerk so entered, the College excepted and appealed to the Superior Court.

A pre-trial conference was held the day before the trial in Superior Court, at which the presiding Judge ruled that the burden of proof was on the respondent College to establish its allegations that the Commissioners of the Housing Authority acted arbitrarily or capriciously in selecting the proposed site.

Upon the call of the case, the respondent College offered the testimony of various witnesses tending to show that the proposed site was vitally needed for the use and expansion of the College and that its appropriation for the purposes sought would be detrimental to the interests and objectives of the College. The College also offered evidence tending to show that there were other suitable sites available where the project could be built.

The Housing Authority offered evidence in refutation tending to show that the campus site was selected after careful survey of several other suggested sites; that it was settled upon as the only feasible site for the project on advice of the city engineer, the Housing Authority architect, its planning consultant, and other engineers.

The presiding Judge formulated and submitted to the jury the following issue, which was answered as indicated:

"Were the Commissioners of the Housing Authority of the City of Salisbury arbitrary or capricious in their selection of the Livingstone College site for Project NC-16-2, as alleged in the respondent's answer? Answer: 'Yes.' "

Judgment was entered on the verdict decreeing that the Housing Authority "is not entitled to condemn the 7.25 acres of land described in said petition and owned by the respondent, Trustees of Livingstone College."

From judgment so entered, the Housing Authority appealed, assigning errors.

*Max Busby* for petitioner, Housing Authority of the City of Salisbury, appellant.

*Clement & Clement and Woodson & Woodson* for respondent, Trustees of Livingstone College, appellee.

JOHNSON, J. In determining what property is necessary for a public housing site, a broad discretion is vested by statute in housing authority commissioners, to whom the power of eminent domain is delegated. G.S. 157-11; G.S. 157-50; G.S. 40-37.

Indeed, so extensive is this discretionary power of housing commissioners that ordinarily the selection of a project site may become an issuable question, determinable by the court, on nothing short of allegations charging arbitrary or capricious conduct amounting to abuse of discretion. See *Power Co. v. Wissler,* 160 N.C. 269, 76 S.E. 267; *Pue v. Hood, Comr. of Banks,* 222 N.C. 310, p. 315, 22 S.E. 2d 896. However, allegations charging malice, fraud, or bad faith in the selection of a housing project site are not essential to confer the right of judicial review. It suffices to allege and show abuse of discretion. The distinction here drawn is not at variance with the decision reached in *In re Housing Authority of the City of Charlotte,* 233 N.C. 649 (headnote 2), 65 S.E. 2d 761 (headnote 4).

The constitutionality of these public housing statutes has been upheld. *In re Housing Authority of the City of Charlotte, supra; Wells v. Housing Authority,* 213 N.C. 744, 197 S.E. 693; *Cox v. Kinston,* 217 N.C. 391, 8 S.E. 2d 252; 172 A.L.R. 966, Annotation.

The allegations set out in the amendment to the answer filed by the respondent, Livingstone College, though couched in language of commendable moderation, are sufficient to put to test, for determination by the court, the question whether the action of the Housing Commissioners in selecting the campus site was arbitrary or capricious amounting to a manifest abuse of discretion.

The Housing Authority stressfully contends that the question whether its Commissioners acted arbitrarily or capriciously in the selection of the campus site was a question of fact not triable by jury, but reviewable only by the presiding Judge on appeal from the Clerk. It is urged that the court below committed prejudicial error in submitting this question to the jury.

Conceding, as we may, that the issuable question thus presented was a question of fact reviewable by the presiding Judge (*Railway Co. v. Gahagan,* 161 N.C. 190, 76 S.E. 696; McIntosh, North Carolina Practice and Procedure, pp. 542, 543), nevertheless it was within the discretionary power of the Judge to submit the question to the jury for determination. *Selma v. Nobles,* 183 N.C. 322, 111 S.E. 543; *Carter v. Carter,* 232 N.C. 614, p. 617, 61 S.E. 2d 711; *Barker v. Humphrey,* 218 N.C. 389, 11 S.E. 2d 280. See also G.S. 1-172.

Besides, the record reflects no exception to the action of the trial Judge in calling to his aid the jury. Indeed, the pre-trial statement of the Judge indicates that counsel for both sides assumed the question at issue would be submitted to the jury, and issues were tendered by each side. It is true the Housing Authority excepted to the issue as submitted, but an examination of the record indicates that the exceptions here relied on relate (1) to the refusal of the court to submit the issue tendered by

counsel for the Housing Authority and (2) to the form of the issue as formulated and submitted by the court. There is no exception to the action of the court in respect to the basic question of jury trial. (R. pp. 15, 48, 49). Therefore, the instant challenge, being unsupported by an exception, may not be asserted successfully for the first time on appeal. *Thompson v. Thompson, ante,* 416. An appeal *ex necessitate* follows the theory of the trial. *Wilson v. Hood,* 208 N.C. 200, 179 S.E. 660. It has been said that "the law does not permit parties to swap horses between courts in order to get a better mount in the Supreme Court." *Weil v. Herring,* 207 N.C. 6, p. 10, 175 S.E. 836.

The issue formulated and submitted by the presiding Judge adequately presented the issuable question raised by the pleadings. Therefore, the petitioner's exception to the issue is without merit.

Next, the Housing Authority insists that the trial court erred in denying its motion, and refusing to give its prayer for special instruction, for a directed verdict. These exceptive assignments test the sufficiency of the evidence to support the verdict and require an examination of what in law amounts to "arbitrary" or "capa&ricious" conduct on the part of the Housing Commissioners.

"Arbitrary" means fixed or done capriciously or at pleasure. An act is arbitrary when it is done without adequate determining principle; not done according to reason or judgment, but depending upon the will alone, —absolute in power, tyrannical, despotic, nonrational,—implying either a lack of understanding of or a disregard for the fundamental nature of things. See Funk & Wagnall's New Standard Dictionary; 3 Words and Phrases, Permanent Edition, pp. 874 and 875; 6 C.J.S. p. 145.

"Capricious" means freakish, fickle, or arbitrary. An act is capricious when it is done without reason, in a whimsical manner, implying either a lack of understanding of or a disregard for the surrounding facts and settled controlling principles. See Funk & Wagnall's New Standard Dictionary; 6 Words and Phrases, Permanent Edition, p. 124; 12 C.J.S. p. 1137.

"Arbitrary" and "capricious" in many respects are synonymous terms. When applied to discretionary acts, they ordinarily denote abuse of discretion, though they do not signify nor necessarily imply bad faith.

Since the exception to the refusal of the court to direct a verdict tests only the sufficiency of the evidence to carry the case to the jury as an open question, it would serve no useful purpose to recapitulate all the evidence, *pro* and *con,* bearing on the issue. Suffice it to say, the respondent College offered evidence tending to show these controlling factors:

(1) That Livingstone College has been located in Salisbury, North Carolina, since about 1885. For many years the College has been maintained by the A.M.E. Zion Church and private donations from individ-

uals and charitable foundations throughout the United States. Its campus, containing about 40 acres, is located in the West Ward of the City of Salisbury, bounded on the east by Craig Street, on the south by the Old Plank Road (now West Marsh Street), on the west by McCoy Street, and on the north by West Monroe Street.

(2) Representatives of the Housing Authority contacted officials of the College with a view of acquiring a housing site on the western side of the campus. The College Board of Trustees, after considering the proposal, reached the conclusion and so notified the Housing Authority that they could not consent for any part of the campus to be put to use as a public housing site, but suggested that the project might be located on the college farm property of 269 acres located some 1,450 feet west of the campus, accessible by two or more roads. The Housing Authority, however, settled upon a 7.25-acre parcel in the southwest corner of the campus fronting on Marsh and McCoy Streets and instituted this proceeding for its condemnation.

(3) The College has accommodations for, and an enrollment of, approximately 400 students. It has "to turn down from 100 to 150 applications each year." It has a four-year curriculum and an "A" rating.

(4) Within the past six years the College has expended "a little over $600,000" in the erection of buildings on the campus, and has "$657,000 earmarked and allotted to the College for future expenditures in the erection of additional buildings" and the development of its athletic field.

(5) No buildings are on the proposed site. However, it is only 57 feet from the athletic field and approximately 300 feet from the recently erected Ballard Hall, which is the westernmost building on the campus.

(6) Most of the present buildings are located on the eastern side of the campus. The proposed plan of expansion calls for the location of new buildings on the western side of the campus in close proximity to the athletic field and the proposed housing site, and this site is essentially necessary to care for the orderly expansion and development of the plant facilities of the College.

It thus appears that substantial evidence was offered tending to show that the Housing Commissioners either failed to understand or disregarded the ill effects and harm likely to come to Livingstone College as a result of locating on its campus a public housing project. The testimony tends to support the inference that they failed to consider the contributions this college is making toward curing the very social and economic ills which public housing is designed to minimize.

The evidence offered in the trial below, when considered in its light most favorable to the respondent, as is the rule on motion for a directed verdict, was sufficient to overcome the motion and sustain the jury-finding that the Commissioners of the Housing Authority acted arbi-

trarily and capriciously in selecting the campus site for the location of the housing project. See *Ferrell v. Insurance Co.,* 207 N.C. 51, 175 S.E. 692; *Perry v. Trust Co.,* 226 N.C. 667, 40 S.E. 2d 116.

Another group of exceptions challenge the action of the trial court in admitting in evidence testimony tending to show that other sites were available and suitable for the housing project. This evidence was relevant and admissible as bearing directly on the main question at issue: whether the Housing Commissioners acted arbitrarily or capriciously in attempting to appropriate the college campus site, and none other. The authorities relied on by the appellant are distinguishable. In any event, the reception in evidence of the challenged testimony would seem to be harmless in view of the admission without objection of other similar testimony. *Price v. Whisnant,* 232 N.C. 653, 62 S.E. 2d 56; *Sprinkle v. Reidsville, ante,* 140; *S. v. Murphy, post,* 503.

Appellant also urges that the court should have charged the jury that the burden of the issue was on the respondent College to satisfy the jury, not by the mere preponderance of the evidence, but by proofs "clear, strong, and convincing" that the Housing Commissioners acted arbitrarily or capriciously in selecting the campus site. The contention is without merit. Ordinarily in civil matters the burden of proof is required to be carried by a preponderance of the evidence, or by its greater weight. It is only in respect to a few cases, "as where, for example, it is proposed to correct a mistake in a deed or other writing, to restore a lost deed, to convert a deed absolute on its face into a mortgage, to engraft a parol trust upon a legal estate, to impeach the probate of a married woman's deed, to establish a special or local custom, and generally to obtain relief against the apparent force and effect of a written instrument upon the ground of mutual mistake, or other similar cause, the evidence must be clear, strong and convincing." *Waste Co. v. Henderson Brothers,* 220 N.C. 438, 17 S.E. 2d 519; *Henley v. Holt,* 221 N.C. 274, 20 S.E. 2d 62. The instant case does not come within the exception to the general rule. See also Stansbury, N. C. Evidence, Sec. 213, p. 457.

Our examination of the remaining exceptions brought forward by the appellant discloses no prejudicial error. A perusal of the record leaves the impression that the appellant's cause was fairly tried, and no reason to disturb the result has been made to appear.

No error.

DENNY, J., took no part in the consideration or decision of this case.

ERVIN, J., concurring: I concur in the result. If I had my way, I would reach the same result more directly by striking down as unconstitutional the statute giving housing authorities the power of eminent domain.

Under this statute, a housing authority condemns the property of one person to provide dwellings for others. No amount of sophistry can erase the plain fact that this is taking the private property of one person without his consent, and devoting it to the private uses of others. This being true, the statute conferring the power of eminent domain upon housing authorities cannot be reconciled with the declarations of the State Constitution that all men are endowed by their Creator with an unalienable right to "the enjoyment of the fruits of their own labor," and that "no person ought to be . . . deprived of his . . . property, but by the law of the land." N. C. Const., Art. I, Section 1, 17. Courts should not sustain legislative acts which sacrifice the constitutional rights of the individual to what is called social progress.