SOUTHWICK, P.J.,
for the Court:
¶ 1. The Mississippi Employee Appeals Board reinstated and demoted James Wal-ley from lieutenant to sergeant at a correctional institution for threatening a subordinate officer. Walley argues here that there was not substantial evidence of a threat and that the penalty was too severe. We disagree and affirm.
FACTS
¶2. James Walley, a corrections officer at the South Mississippi Correctional Institute (SMCI), was terminated from his employment by the Mississippi Department of Corrections (MDOC). On appeal to the Mississippi Employee Appeals Board (EAB), Walley was reinstated and demoted from a lieutenant to a sergeant. Wal-ley’s alleged offense was the intimidation of a junior correctional officer who had given testimony in a sexual harassment investigation of Walley’s immediate supervisor, Captain Arthur Patrick. Walley testified that he was merely joking with the officer and did not intend to intimidate him.
¶ 3. During the investigation of Captain Patrick, officers at the SMCI had been asked not to discuss the probe. However, the investigation apparently had been the subject of gossip and speculation among the correctional officers. Officer Kevin Poole had been interviewed by Internal Affairs about an incident of alleged sexual harassment by Captain Patrick which he witnessed, and he had been warned that some of the other officers might attempt to intimidate him, threaten him or even retaliate against him.
¶4. On the night of January 25, 1998, Poole and Walley both were working the night shift and both had errands at the prison infirmary. Poole testified that Wal-ley approached him and commented that he understood that Captain Patrick had become angry and had walked out of his *62 interview with Internal Affairs several days before. Poole said Walley then put his fingers under Poole’s chin, pushed his head backwards, and asked him, “Do you think your life is in danger, Officer Poole?” Poole took this as a threat because he said he believed that Walley had ties to the prison’s inmate gangs and could exact retribution against him for testifying. He immediately reported Walley’s actions by filing an incident report. The officer with whom he filed the report said that Poole was visibly shaken by the incident and afraid for his life. The MDOC suspended Walley immediately and later terminated his employment after an investigation of the incident.
¶ 5. Walley tells a different story. He testified that he had been off for the two days before the incident in question and was outside the infirmary catching up on gossip when he learned that Captain Patrick had walked out of his Internal Affairs interview and also that Poole believed his life was in danger. When he went into the infirmary and saw Poole sitting at a desk there, Walley said he walked over to him, mentioned the Patrick incident and grabbed Poole by the cheek, asking him in a solicitous manner if he was afraid for his life. Walley said he was motivated by concern for his subordinate, and that pinching Poole’s cheek was a familiar gesture that he had repeated at least a hundred times in jest. He said that it was he who had given Poole his nickname of “Pooh Bear,” and that he used that name when he asked about Poole’s fear for his life. Walley said that he did not even know that Poole had been interviewed by Internal Affairs.
¶ 6. Four other officers testified before the EAB that Walley had a habit of pinching the cheeks of other employees in a playful and joking manner. However, none of them was present when the incident with Poole occurred, so none could testify as to whether Walley threatened Poole or not.
¶ 7. The EAB agreed with the MDOC that Walley’s actions had been intended to threaten or intimidate Poole, and thus were violations of the following nature: Group III Number 9: Threatening[1] or coercing employees, supervisors, or business invitees of a state agency or office, including stalking.
Group III Number 11: Acts of conduct occurring on or off the job which are plainly related to job performance and are of such nature that to continue the employee in the assigned position could constitute negligence in regard to the agency’s duties to the public or to other state employees.
Mississippi State Personnel Board Policy and Procedures Manual 9.3, 9.4 (Rev. July 1999).
¶ 8. However, the EAB held that termination was too harsh a penalty for the offenses. It ordered Walley reinstated but demoted from lieutenant to sergeant. Walley appealed this decision to the Greene County Circuit Court, which affirmed it. He now appeals to this Court.
DISCUSSION

I. Decision was Arbitrary, Capricious, Without Substantial Evidence

¶ 9. The scope of review employed by the circuit court when evaluating decisions of the EAB is outlined by statute. The court reviews the record made before the EAB to determine if the decision was unlawful because it was:
(a) Not supported by any substantial evidence;
*63 (b) Arbitrary or capricious; or
(c) In violation of some statutory or constitutional right of the employee.
Miss.Code Ann. § 25-9-132(2) (Rev.1999). The statute further allows that any party aggrieved by the circuit court’s action may appeal to the supreme court. Miss.Code Ann. § 25-9-132(4) (Rev.1999). That court deflected the appeal here. This Court is limited to the same scope of review as the circuit court. State Tax Comm’n v. Vicksburg Terminal, Inc., 592 So.2d 959, 961 (Miss.1991).
¶ 10. The supreme court has said that the terms “arbitrary” and “capricious” are “open-textured and not susceptible of precise definition or mechanical application.” Miss. Dept. of Health v. Southwest Miss. Reg’l Med. Ctr., 580 So.2d 1238, 1240 (Miss.1991). However, the court quoted approvingly a definition from another state which states that an arbitrary act is one that is done without adequately determining principle, not according to reason or judgment, depending on the will alone. Id. (quoting In Re Housing Authority of City of Salisbury, 235 N.C. 463, 70 S.E.2d 500, 503 (1952)). An act is capricious when it is “done without reason, in a whimsical manner, implying either a lack of understanding of or a disregard for the surrounding facts and settled controlling principles.” Id.
¶ 11. Although there are two diametrically opposed views of the meaning of Walley’s gesture and remarks to Poole, the EAB did not arbitrarily nor capriciously accept Poole’s story over Walley’s. Instead, it conducted a thorough and fair hearing, taking testimony not only from Poole and Walley, but from the superintendent of the SMCI (who had conducted his own investigation) and from four officers who worked with Poole and Walley on a regular basis. There was no eyewitness to confirm the tone or meaning of the remarks and gesture other than the two officers involved, so the EAB had to make a determination, based on the information it had before it and the demeanor of the witnesses. This it did.
¶ 12. The record reveals that Poole perceived Walley’s statement and gesture as a threat. He based this perception on Walley’s attitude toward him at the time of the incident, against the background of the ongoing sexual harassment investigation and Poole’s belief concerning Walley’s influence and contacts among the prison population. The record shows that Poole was shaken by the incident to’ the extent that he offered to relinquish his job at the SMCI to avoid danger to himself. It was within the discretion of the EAB to find Poole’s testimony credible and Walley’s testimony a less believable explanation of events.

II. Inappropriate Form, of Discipline

¶ 13. The EAB found that Walley intended to intimidate Officer Poole and that the MDOC was justified in taking disciplinary action against Walley on this basis. Although the EAB’s order does not specifically mention Group III, Offense 9 or 11, a finding of deliberate intimidation necessarily involves those categories. So the EAB upheld the violation found by the MDOC, just not the punishment.
¶ 14. Group III offenses are acts and behavior “of the most serious nature.” These offenses may be punished by a written reprimand and/or suspension without pay, demotion or dismissal. Mississippi State Personnel Board Policy and Procedures Manual 9.3, 9.4 (Rev. July 1999). The manual also states that “a permanent state service status employee may be demoted from a position in one (1) class to a position in a lower class having a lower salary range and having less discretion or responsibility only for cause.” Id. at 9.6. In this case, cause was demonstrated and affirmed. Therefore, the punishment for Walley’s violations could have ranged from suspension to termination, including demotion.
*64 ¶ 15. Walley argues that an inconsistency exists between the offense and the punishment rendered. He uses as an example the case of another correctional officer who was demoted after threatening an employee following three prior disciplinary actions. The fact that Walley had a clean record before the event that led to the present discipline is admirable but does nothing to lessen the seriousness of the offense he has been found to have committed. He was disciplined for the present violation and not an accumulation of previous conduct. The EAB gave his arguments sufficient weight as to retain him, but there was no invalidity to demotion on the basis of one incident, found to be true, of a significant threatening act.
¶ 16. THE JUDGMENT OF THE CIRCUIT COURT OF GREENE COUNTY AFFIRMING THE DECISION OF THE EMPLOYEE APPEALS BOARD, WHICH AFFIRMED THE DECISION OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND IMPOSED THE PUNISHMENT OF DEMOTION, IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING, P.J., BRIDGES, IRVING, LEE, MOORE, MYERS, PAYNE, AND THOMAS, JJ., CONCUR.

. Walley makes much of a distinction between "threatening” and "intimidating.” The EAB’s chief hearing officer found that Walley "intimidated” Officer Poole, not that he "threatened” him. We find that here the words are interchangeable, and that "intimidation” includes “threaten.” "Intimidate” means: "(1) To make timid; fill with fear. (2) To coerce or inhibit by or as if by threats.” The American Heritage College Dictionary 712 (3d ed. 1993).