***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the award, except for minor modifications, the Full Commission AFFIRMS and ADOPTS the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. Amanda Hamm was killed in an accident on 10 October 1996 on Highway N.C. 97 in Nash County, North Carolina, when the vehicle she was riding in as a passenger crashed into the end of the concrete bridge rail over Turkey Creek.
2. The Tort Claim was properly filed under N.C. Gen. Stat. § 153-291 et seq.
3. The Estate of Amanda Hamm recovered funds in the amount of $132,333.32 from the insured driver of the vehicle.
4. Medical expenses from the Nash County Ambulance Service total $100.00.
5. Funeral expenses from Johnson Funeral Home-Sunset total $5,710.34.
6. The parties have reviewed the various exhibits which may be offered in this matter and have agreed to a Stipulated Exhibit 1 which includes the documents set forth in the following Table of Contents:
1. Photo of Amanda Hamm (1 photo)
2. Photo of Amanda Hamm's headstone (2 photos)
3. Accident Report dated 10/10/96
 4. Photos of accident site and video tape taken by N.C. State Highway Patrol (9 photos)
5. Nash County Ambulance Service report and charges
6. Death Certificate
7. Photo of Amanda Hamm at funeral and funeral bill
 8. DOT Discovery responses Interrogatory responses Documents produced (Tabs 1-11)
Documents produced:
Exhibit 1: Bridge Inspection Reports
Exhibit 2: Summary of sufficiency rating factors
 Exhibit 3: New Biennial Strip Update Process National Bridge Inspection Standards
9. Crash listing for Turkey Creek Bridge location and Accident Reports indicated in crash listing (14 reports)
10. Crash Summary of Accidents involving Turkey Creek Bridge
11. N.C.D.O.T. Standard Specifications for Roads and Structures (July 1995) Section 862 Guardrail Section 863 Remove Existing Guardrail Section 1046 Guardrail Materials Roadway English Standard Drawings — Guardrails
12. N.C.D.O.T. August 1998 Board of Transportation Minutes
13. N.C. Gen. Stat. 136-45 State Highway System — General Purpose N.C. Gen. Stat. 143B-346 DOT — Purpose and Functions
14. Photos of accident site taken by DOT (4 photos)
 ***********
The Full Commission adopts the findings of fact found by the Deputy Commissioner and finds as follows:
 FINDINGS OF FACT
1. The decedent, Amanda Hamm, was a passenger in a vehicle driven by 17 year-old David R. Moss. On 10 October 1996, Moss was driving Amanda and two other young people to school. While traveling on N.C. 97, Moss lost control of his vehicle and went completely off the roadway. After leaving the roadway, Moss' vehicle struck the bridge rail on the Turkey Creek Bridge. The accident occurred at about 7:20 a.m. on 10 October 1996.
2. Trooper C.E. Thomas, the primary investigator of this accident, arrived minutes after the accident. The Moss vehicle was completely outside the fogline (white edge line) and completely off the roadway when it struck the bridge rail. Trooper Thomas determined that the car was traveling at approximately 55 miles per hour and that the driver never applied his brakes prior to the impact. There was some speculation, based upon testimony at the hearing before the Deputy Commissioner, that the driver may have been blinded by the sun at the time of impact.
3. The portion of N.C. 97 where the accident occurred is a straight road traveling east towards the Turkey Creek Bridge. There were no road defects that caused the Moss vehicle to leave the roadway.
4. The bridge rails on the Turkey Creek Bridge were completely outside the edge lines and completely outside the roadway. Therefore, the bridge rails were not within the portion of the roadway intended for vehicular travel as defined by N.C. Gen. Stat. § 20-4.01(38).
5. The speed limit in both directions of this portion of N.C. 97 is fifty-five (55) miles per hour, with a forty-five (45) miles per hour advisory.
6. There are almost 18,000 bridges in the State of North Carolina and the Bridge Maintenance Unit has 52 inspectors. The Bridge Maintenance Unit is required to inspect each bridge in the State every two years. The North Carolina Department of Transportation spends over $100,000,000.00 each year on bridge replacement and improvement.
7. According to the Bridge Maintenance Unit's records, the Turkey Creek Bridge scored below 50 on its inspection in 1991. A score below 50 on an inspection made a bridge eligible for replacement under federal guidelines.
8. The Turkey Creek Bridge was placed on the North Carolina Department of Transportation's "Transportation Improvement Program" (TIP) in 1992 for replacement in 1999. This was the first time the TIP could be updated after the 1991 inspection. The replacement cost was approximately $1,000,000.00.
9. Once a project is placed on the TIP, the State Board of Transportation can move it up or down the completion schedule, and the Bridge Maintenance Unit does not make that decision.
10. The Turkey Creek Bridge was finally replaced in 1998.
11. In the mid 1960's the North Carolina Department of Transportation implemented the "Highway Safety Improvement Program". The Highway Safety Improvement Program reviews the available accident data and determines what locations in the state need additional investigation to determine if there is an engineering problem at a location. To establish a proper priority for the program, minimum criteria are set.
12. For 1996, the minimum criteria was 9 or more accidents with half of those accidents involving vehicles running off the road and 25% involving fatalities over the previous three years.
13. In the three years prior to 1996, there were 3 accidents within 500 feet of the Turkey Creek Bridge, which is well below the minimum criteria. None of the accidents involved fatalities.
14. Defendant presented evidence that if the minimum criteria for the Highway Safety Improvement Program was set at eight accidents in the three-year period prior to 1996, the number of locations to be investigated would have been 18,500.
15. In this three-year period there were approximately 600,000 crashes on North Carolina roads.
16. The Highway Safety Improvement Program runs out of money each year before all the identified locations are improved. The amount of funding is set by the General Assembly.
17. There is no guideline or standard that requires existing bridges or other roadway structures to be brought to existing code and standards for new construction. If such a requirement were imposed, it would be impossible for the North Carolina Department of Transportation to meet the requirement, as there are not sufficient resources.
18. Plaintiff presented Raymond McHenry as an expert witness. Mr. McHenry was accepted as an expert in highway safety and vehicle dynamics. Mr. McHenry, who is not a registered Professional Engineer in North Carolina, was not accepted as an expert in guardrail design and use.
19. During his testimony, Mr. McHenry stated that the earliest materials he could find on guardrails dated from 1965. On cross-examination McHenry admitted that he did not know when the bridge at Turkey Creek was built. The bridge was actually built in 1926.
20. Mr. McHenry admitted on cross-examination that he did not know how many bridges there were in the State of North Carolina, but thought that there were likely over 2,000. The actual number is close to 18,000.
21. Mr. McHenry admitted during cross-examination that he did not know how many narrow bridges exist in the State of North Carolina, or how many of these narrow bridges had guardrails.
22. Mr. McHenry also admitted during cross-examination that he did not know how many locations in North Carolina had an average of two or more crashes a year in the three years from 1993 through 1995.
23. The North Carolina Department of Transportation has the authority, duty and responsibility to plan, design, locate, construct and maintain the existing public highways in the State of North Carolina.
24. The North Carolina Department of Transportation is vested with broad discretion in carrying out its duties and responsibilities with respect to the design and construction of public highways.
 ***********
Based upon the findings of fact and conclusions of law, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. There was no negligence on the part of any named officer, employee or agent of the State while acting within the scope of his or her office, employment, service, agency or authority which proximately caused decedent's tragic death. Therefore, plaintiff is not entitled to damages. N.C. Gen. Stat. § 97-143-291 et seq.; See also In reHousing Authority, 235 N.C. 463, 468, 70 S.E.2d 500, 503 (1952); Woolardv. DOT, 93 N.C. App. 214, 377 S.E.2d 267, cert. denied, 325 N.C. 230,381 S.E.2d 782 (1989); Guyton v. Board of Transportation, 30 N.C. App. 87,226 S.E.2d 175 (1976).
2. The sole proximate cause of the accident which resulted in the death of decedent was the negligence of the driver of the vehicle in which decedent was a passenger, David R. Moss. Moss' vehicle was completely off the roadway with both tires outside the white fog or edge line at the point of impact. Moss was traveling at approximately 55 miles per hour and never applied his brakes prior to the impact. There was no road defect that caused Moss to leave the roadway. This negligence was the sole cause of the accident and insulated defendant from liability resulting from any negligence alleged by plaintiff. Smithv. Sink et al., 211 N.C. 725, 192 S.E. 108 (1937); Powers v. S. Sternberg Company et al., 213 N.C. 41, 195 S.E. 88 (1938); Brown v. Wilkins,102 N.C. App. 555, 402 S.E.2d 883 (1991).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Under the law, plaintiff's claim must be, and the same is hereby, DENIED.
2. Each side shall bear its own costs.
This the ___ day of January 2002.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/______________ RENE C. RIGGSBEE COMMISSIONER
LKM/mhb