IN RE: HOUSING AUTHORITY OF THE CITY OF CHARLOTTE, N. C., HOUSING PROJECT N. C. 3-3.

(Filed 7 June, 1951.)

**1. Municipal Corporations § 8d: Eminent Domain § 14—**

The hearing before the Utilities Commission of a petition of a housing authority for a certificate of public convenience and necessity is solely for the purpose of determining the public need for such project in the particular community, and it is not required that the petition set out a description of the property which the authority may select as the *situs* or that the owners of such property be made parties or be given notice of the proceedings before the Utilities Commission.  G.S. 40-53, G.S. 157-28, G.S. 157-45, G.S. 157-51.

**2. Same—**

The selection of a site for a public housing project after the issuance of a certificate of public convenience and necessity is within the sound discretion of the housing authority upon its resolution finding in good faith that the acquisition of such property is in the public interest and necessary for public use, and while it will be presumed that a housing authority has acted in good faith in the exercise of such power, the owners of the property may in the condemnation proceedings challenge the selection of the site on the ground that the authority acted arbitrarily, capriciously or fraudulently in making such selection.  G.S. 40-36, G.S. 157-11, G.S. 157-50.

**3. Public Officers § 9—**

It will be presumed that public officials have exercised their powers in good faith in accord with the spirit and purpose of law.

**4. Municipal Corporations § 8d: Eminent Domain § 14: Utilities Commission §§ 3, 5—**

In passing upon the petition of a housing authority, the Utilities Commission determines only the public need for such project in the particular community, and its issuance of a certificate of public convenience and necessity does not give the housing authority any right, title or interest in real estate, even though the property be described in the petition, and therefore the individual property owners are not parties and have no right

to appeal from the order of the Utilities Commission. G.S. 40-53, G.S. 157-28, G.S. 157-45, G.S. 157-51.

**5. Utilities Commission § 3: Municipal Corporations § 8d: Eminent Domain § 14—**

The order of the Utilities Commission granting a certificate of public convenience and necessity to a housing authority cannot be collaterally attacked in the eminent domain proceedings thereafter instituted by the housing authority when it appears that the certificate of the Utilities Commission was issued after due investigation upon its finding based upon the evidence that there existed in the area a need for public housing and that the statutory procedure had been followed.

**6. Appeal and Error § 6c (3)—**

Where the evidence is not brought forward in the record it will be presumed that there was competent evidence to support the court's findings of fact.

**7. Municipal Corporations § 8d: Eminent Domain §§ 4, 6—**

The fact that a few isolated properties in an area sought to be condemned for a public housing project are above the standard of slum properties does not affect the public character of the taking, and such properties may be condemned in proper proceedings by a municipal housing authority.

**8. Same—**

A municipal housing authority is given the power by G.S. 157-11 and G.S. 157-50 to condemn by eminent domain any real property which it may deem necessary for a housing project, and G.S. 40-10 does not apply to such proceedings.

Barnhill and Ervin, JJ., dissent.

Appeal by petitioner and respondents from *Bennett, Special Judge,* January Term, 1951, of Mecklenburg.

This is a proceeding to authorize the Housing Authority of the City of Charlotte to condemn certain lands as a site for the construction of 400 additional units of decent, safe and sanitary low-rent dwellings.

On 30 March, 1950, the North Carolina Utilities Commission, upon application of the Housing Authority of the City of Charlotte, N. C., issued to said Authority its certificate of public convenience and necessity for a project or projects for the construction of not exceeding 600 low-rent dwelling units.

After the procurement of the certificate of public convenience and necessity for the project or projects, the Housing Authority adopted an appropriate resolution declaring that the acquisition of the property described therein was in the public interest and necessary for public use, as required by G.S. 157-11 and 157-50.

Thereafter, said Housing Authority filed a petition with the Clerk of the Superior Court of Mecklenburg County to condemn the respective properties described in the aforesaid resolution as a site upon which to erect 400 low-rent dwelling units, as provided in the Public Works Eminent Domain Law, G.S. 40-30 to G.S. 40-53, inclusive. Attached to and incorporated therein by reference was a copy of the certificate of public convenience and necessity issued by the North Carolina Utilities Commission.

In apt time, the owners of 31 out of 109 parcels of land compromising the site described in the petition, challenged the validity of the condemnation proceeding. After hearing, the Clerk of the Superior Court held that the proceeding was invalid as to respondents who owned and resided in homes located in the area sought to be condemned, but valid as to all others. Whereupon the Housing Authority and respondents who did not own homes appealed to the Superior Court.

When this cause came on for hearing in the Superior Court, counsel for all parties stipulated as follows:

"1. That no notice was given the owners of the subject property of any proceeding before the Utilities Commission.

2. That the subject property was not described in the certificate of convenience and necessity.

3. That the subject property had not been selected as the site for this project at the time the Utilities Commission made its investigation, entered its order and issued its certificate.

4. That no order of the Utilities Commission was served on the owners of the subject property prior to the institution of this eminent domain proceeding.

5. That the Housing Authority of the City of Charlotte is established and exists in conformity with the provisions of Chapter 157 of the General Statutes of North Carolina.

6. The Housing Authority of the City of Charlotte is a corporation of the type enumerated in G.S. 157-50.

7. The Housing Authority of the City of Charlotte did pass an appropriate resolution as required by G.S. 157-11 and 157-50.

8. That no notice was given to the individual respondents of the action of the Housing Authorities in the adoption of the foregoing resolution.

9. The provisions of G.S. 40-36 with regard to notice have been complied with.

10. The court may hear the evidence and find the facts in this case.

11. That the property line map by J. W. Spratt, County Surveyor, dated 30 June, 1950, and filed with the petition in the office of the Clerk of the Superior Court of Mecklenburg County, accurately reflects the property which is the subject of this proceeding."

The court, upon hearing evidence and argument of counsel, held that the action taken by the Housing Authority of the City of Charlotte was not arbitrary, capricious or fraudulent, nor was it an abuse of discretion. The court further found the facts to be as stipulated by counsel and entered its conclusions of law, as follows:

"1. The right of eminent domain provided for in G.S. 40-30 through 40-53, inclusive, can be exercised for the purpose of constructing new low-rental housing despite the fact that the area sought to be condemned may not be a slum area.

2. That no notice was required at the time of the adoption of a resolution by the Housing Authority of the City of Charlotte to the effect that the acquisition of the property described in said resolution was necessary and convenient and in the public interest for the purposes expressed in the Housing Authority Law.

3. That no notice to the individual respondents of the action of the Utilities Commission of North Carolina was necessary for the issuance of a certificate of convenience and necessity, as required by Sec. 40-53 and Secs. 157-28, 157-45, 157-51 of the G.S. of North Carolina.

4. That no copy of the certificate of convenience and necessity need have been served upon the owners of property which is sought to be condemned by the Housing Authority.

5. That no notice other than that prescribed in G.S. 40-36 need have been given at the time of institution of eminent domain proceedings under G.S. 40-30 through 40-53.

6. That G.S. 40-10 does not apply to this proceeding and that the Housing Authority of the City of Charlotte was authorized and empowered to condemn, without consent of the owners, their dwelling houses, yards, kitchens, gardens or burial grounds.

7. That the Utilities Commission must hold a hearing before issuing a certificate of convenience and necessity for a housing project.

8. That a certificate of convenience and necessity from the Utilities Commission of North Carolina was a condition precedent to the institution of condemnation proceedings against specific property under the Housing Authority Law, and that the certificate of convenience and necessity issued by the Utilities Commission and made a part of the petition was null and void in that the *situs* of the property to be taken was not sufficiently described, and that the Utilities Commission did not have reference to any specific property and therefore did not have the subject matter of the action before it when it issued said certificate of convenience and necessity, and that the action taken by the Utilities Commission of the State of North Carolina may be collaterally attacked in this proceeding."

Upon these conclusions of law the court entered judgment, the pertinent parts of which are set out below.

As to respondents Murphey McKnight and wife, Isabel McKnight, and Henry Porter and wife, Janie Mae Porter: "It is therefore, . . . Ordered, Adjudged and Decreed, that the Motion to Dismiss of the respondents be and the same is hereby allowed, sustained and granted, and the proceedings heretofore had in this matter be and the same are hereby dismissed, vacated, and ordered null and void. . . ."

As to the remaining respondents: "It is Ordered, Adjudged and Decreed that the petition does not state a cause of action and that the demurrer *ore tenus* and motion to dismiss be sustained and allowed as to the respondents. It is Further Ordered, Adjudged and Decreed that the proceedings heretofore had in this matter are void and of no effect as to respondents named herein."

Petitioner, Housing Authority of the City of Charlotte, N. C., excepts to the judgment granting respondents Murphey McKnight and wife and Henry E. Porter and wife's motion to dismiss, and further excepts to judgment sustaining the other respondents' demurrer *ore tenus* and granting their motion to dismiss, and appeals to the Supreme Court.

All the respondents except to the conclusions of law hereinabove set out numbered one to six, and appeal to the Supreme Court.

*Lassiter & Moore and Elmer E. Rouzer for petitioner.*

*Attorney-General McMullan and Assistant Attorney-General Paylor, Amicus Curiæ.*

*Elbert E. Foster for respondents McKnight and Porter.*

*Goodman & Goodman, Sol Levine, and Wendell R. Wilmoth for respondents other than McKnight and Porter.*

DENNY, J. This Court upheld the constitutionality of the Housing Authorities Law enacted by the General Assembly in 1935, being Chapter 456 of the Public Laws of 1935, and codified in our General Statutes in Sections 157-1 to 157-60, inclusive, in the case of *Wells v. Housing Authority*, 213 N.C. 744, 197 S.E. 693. It was there decided that a housing authority created pursuant to the provisions of the Housing Authorities Law is a municipal corporation; that the act comprehends a public governmental purpose, and that the corporation is invested by it with a governmental function. This decision has been followed and approved in *Cox v. Kinston*, 217 N.C. 391, 8 S.E. 2d 252, and in *Mallard v. Housing Authority*, 221 N.C. 334, 20 S.E. 2d 281.

The respondents do not contend that the proposed project is not needed in the City of Charlotte, or that the proposed construction of 400 low-

rent dwelling units by the Housing Authority of the City of Charlotte is not in the public interest and necessary for public use. The findings of the petitioner in this respect are not challenged. Furthermore, it is stipulated that the Housing Authority of the City of Charlotte is a corporation, duly established and existing in conformity with the provisions of the Housing Authorities Law, and that it did pass an appropriate resolution as a prerequisite to the institution of this proceeding, as required by G.S. 157-11 and 157-50. Therefore, it is conceded by all parties that the Housing Authority of the City of Charlotte has found that the acquisition of the property which it seeks to acquire by eminent domain is in the public interest and necessary for public use.

However, in the hearing below, the respondents challenged the validity of the proceeding on the ground that the petitioner had failed to observe all the statutory requirements governing such project or projects. And the court concurred in this view and held the certificate of public convenience and necessity was null and void because the application of the Housing Authority of the City of Charlotte, for such certificate, did not sufficiently describe the *situs* of the property to be taken in the condemnation proceeding as a site for the proposed housing project; and, also held that the Utilities Commission must hold a hearing before issuing a certificate of public convenience and necessity, but that the individual respondents were not entitled to any notice with respect thereto.

The respondents base their contentions on the provision contained in the following statute: "Notwithstanding any findings of public convenience and necessity, either in general or specific, by the terms of this article, the right of eminent domain shall not be exercised unless and until a certificate of public convenience and necessity for such project has been issued by the utilities commission of North Carolina, and the proceedings leading up to the issuing of such certificate of public convenience and necessity, and the right to appeal therefrom shall be as now provided by law and said rights are hereby expressly reserved to all interested parties in said proceedings. In addition to the powers now granted by law to the utilities commission of North Carolina, the said utilities commission is hereby vested with full power and authority to investigate and examine all projects set up or attempted to be set up under the provisions of this article and determine the question of the public convenience and necessity for said project." G.S. 40-53.

These identical provisions are also contained in G.S. Sections 157-28, -45 and -51.

The Housing Authority of the City of Charlotte, acting in co-operation with the City of Charlotte, is subject to the provisions set forth in G.S. 157-40 and subsequent sections in the Housing Authorities Law. In G.S. 157-40 and in G.S. 157-48, the Legislature of North Carolina made

a finding and declaration of necessity with respect to the need for safe and sanitary dwelling accommodations for persons of low income. The Legislature also made a similar finding which is contained in G.S. 40-31, which is a part of the Public Works Eminent Domain Law. This law defines a "public works project" as any work or undertaking which is financed in whole or in part by a federal agency, as therein defined, or by a state public body, as therein defined, G.S. 40-32 (a). While it is said in the Housing Authorities Law, G.S. 157-3 (10) : " 'Housing project' shall include all real and personal property, buildings and improvements, stores, offices, lands for farming and gardening, and community facilities acquired or constructed or to be acquired or constructed pursuant to a single plan or undertaking (a) to demolish, clear, remove, alter or repair unsanitary or unsafe housing, and/or (b) to provide safe and sanitary dwelling accommodations for persons of low income. The term 'housing project' may also be applied to the planning of the buildings and improvements, the acquisition of property, the demolition of existing structures, the construction, reconstruction, alteration and repair of the improvements and all other work in connection therewith." And in G.S. 157-41 (4), it is provided that a " 'housing project' shall mean any undertaking (a) to demolish, clear, remove, alter or repair unsafe and unsanitary housing, and/or (b.) to provide dwelling accommodations for persons of low income, and said term may also include such buildings and equipment for recreational or social assemblies for educational, health or welfare purposes, and such necessary utilities as are designed primarily for the benefit and use of the housing authority and/or the occupants of such dwelling accommodations."

We think the finding of public convenience and necessity, either in general or specific terms, as pointed out in G.S. 40-53, has reference to any finding made "either in general or specific" terms by the Legislature and set forth in the Housing Authorities Law, which finding shall not be sufficient to warrant the exercise of eminent domain in connection with any project authorized thereby. But a certificate of public convenience and necessity for such project must be obtained from the Utilities Commission—that is, the public need for such a project in a particular community must be made to appear and a certificate of public convenience and necessity must be obtained before the petitioner may proceed to condemn property for such a project. We do not think, however, that it was the legislative intent to require a petitioner to select and describe in detail the land it might need for the construction of a proposed project before it ascertained whether or not it would be permitted to proceed with the project.

It is contended by the respondents that if the petitioner was not required to inform the Utilities Commission as to the specific property it

proposed to condemn as a site for its housing project, at the time it applied for a certificate of public convenience and necessity, it is conceivable that the Housing Authority of the City of Charlotte, after obtaining such certificate, might have proceeded to condemn the property surrounding the intersection of Trade and Tryon Streets in the City of Charlotte, as a site for its housing project, if it had so desired. However, it would be difficult to conceive how the officials of the Housing Authority of the City of Charlotte could find in good faith that the acquisition of such property was in the public interest and necessary for public use. Moreover, there is a presumption that public officials will discharge their duties in good faith and exercise their powers in accord with the spirit and purpose of the law. *Kirby v. Board of Education,* 230 N.C. 619, 55 S.E. 2d 322; 31 C.J.S., Evidence, Section 146, p. 799, *et seq.,* and cited cases.

We know of no statutory requirement to the effect that the application of a housing authority for a certificate of public convenience and necessity in this State must contain a description of the property upon which the low-rent dwellings are to be located, or to require notice to the owners of such property of the filing of an application for such certificate. The statute does not provide for the North Carolina Utilities Commission to select or approve the selection of the site for a housing project. On the contrary, the selection of a site for such project is vested in the housing authority. In *State ex rel. Porterie v. Housing Authority,* 190 La. 710, 182 So. 725, the Court, in considering the resolution to the effect that certain realty was necessary for a housing project, said: "What this provision means is that a housing authority, and not the administrative or executive department of a city, is to determine the propriety of locating a project in any particular part of the city, and that, as to that, the decision of the housing authority is conclusive."

It is our opinion, however, and we so hold, that if a local housing authority should act in bad faith in the selection of a site for a housing project, that is, if it should act arbitrarily, capriciously or fraudulently in making such selection, such action may be challenged in the proceedings to condemn the property. G.S. 40-36. But in the absence of an allegation charging that the action of the local housing authority was arbitrary, capricious or fraudulent, the selection of a site for a housing project will not be disturbed. *Brammer v. Housing Authority,* 239 Ala. 280, 195 So. 256. And it will be noted that in this proceeding the court below found as a fact that the action taken by the Housing Authority of the City of Charlotte was not arbitrary, capricious or fraudulent, nor was it an abuse of discretion, and there is no exception to such finding.

A housing authority must do two things before it may institute a proceeding for the taking of property under the right of eminent domain,

pursuant to the provisions of the Public Works Eminent Domain Law. G.S. 40-30 to 40-53, inclusive. It must obtain a certificate of public convenience and necessity from the North Carolina Utilities Commission and it must adopt a resolution "declaring that the acquisition of the property described therein is in the public interest and necessary for public use." G.S. 157-11 and 157-50. When these requirements have been met, the housing authority is empowered by statute to acquire by the right of eminent domain any real property, including fixtures and improvements thereon, described in its resolution passed pursuant to the provisions of G.S. 157-11. G.S. 157-50.

In our opinion, the North Carolina Utilities Commission has only one question to consider and determine in connection with an application of a housing authority for a certificate of public convenience and necessity, and that is whether the area within the jurisdiction of the particular housing authority is eligible for the construction of the low-rent dwellings proposed, within the purview of the Housing Authorities Law. The statute only empowers the Utilities Commission to investigate and examine all projects set up or attempted to be set up under the provisions of the Housing Authorities Law to determine "the question of the public convenience and necessity for said project." G.S. 40-53, 157-28, 157-45 and 157-51. It is true these statutes provide for an appeal from the ruling of the Commission, on an application for a certificate of public convenience and necessity, by interested parties. The question then arises as to who are interested parties. The answer is found in G.S. 62-26.6, which provides for an appeal from a determination or decision made by the Utilities Commission by any party affected thereby. However, such affected party must file exceptions to the determination or decision within ten days after notice of the determination or decision. And it has been repeatedly held by this Court that an appeal from the Utilities Commission is limited to parties to the proceeding, *Utilities Com. v. Kinston,* 221 N.C. 359, 20 S.E. 2d 322; *Corporation Commission v. R. R.,* 196 N.C. 190, 145 S.E. 19; *Corporation Commission v. R. R.,* 170 N.C. 560, 87 S.E. 785; *Hardware Co. v. R. R.,* 147 N.C. 483, 61 S.E. 271; and a party is not affected by a ruling of the Utilities Commission unless the decision "affects or purports to affect some right or interest of a party to the controversy and in some way determinative of some material question involved." *Hardware Co. v. R. R., supra; Chicago B. & Q. R. Co. v. Cavanagh,* 278 Ill. 609, 116 N.E. 129; *Zurn v. City of Chicago,* 389 Ill. 114, 59 N.E. 2d 18. And the issuance of a certificate of public convenience and necessity for the construction of low-rent dwellings in the City of Charlotte is in no way determinative of any right of these respondents. Such certificate does not give a local housing authority any right, title

or interest in real estate, even though the property may be described in the petition for the certificate of public convenience and necessity.

In the case of *Chicago B. & Q. R. Co. v. Cavanagh, supra,* the State Public Utilities Commission, after an investigation of existing conditions, found that public convenience and safety required a relocation of the petitioner's railroad tracks between certain points. The petitioner was directed to make such changes in the location of its existing right of way as might be necessary to comply with the order, and to acquire, either by purchase or the exercise of eminent domain, whatever property might be necessary for the purpose. The defendants contended, just as the respondents do in the proceeding before us, that since they were not served with notice of the hearing or investigation, nor with a certified copy of the order, so that they might contest it before the Commission and appeal from the order, that it was not binding on them and that the petitioner was, therefore, not entitled to take their property under the right of eminent domain. The lower court concurred in this view and dismissed the proceeding, but upon appeal to the Supreme Court, the lower court was reversed. The Supreme Court of Illinois held that the statute requiring notice and giving the right of appeal applied only "to notice or service of an order upon some person or corporation either complained of or required to do something or to comply with some order, rule, or regulation. . . . The order of the Commission did not amount to an appropriation of the defendants' property or any interest in it, which could only be accomplished by the filing of a petition and the ascertainment and payment of compensation for the property, so that there was no violation of the due process provision of the Constitution. The defendants were not deprived of their property, nor of any interest therein, by the mere making of the order, which neither gave the petitioner any interest in or right to possession of the property. The General Assembly has unlimited power to take private property for public use, or to authorize it to be taken, upon making compensation, reserving to the property owner the right to contest the question whether the proposed use is public or private, and whether the power is to be exercised for the purpose for which it was conferred."

In *Zurn v. City of Chicago, supra,* the statute provided that Neighborhood Redevelopment Corporations, which were only semi-public, in applying for a certificate of convenience and necessity should contain a description of the property to be obtained, and, further, provided that "no steps may be taken by a redevelopment corporation, in the process of slum clearance and rehabilitation, until its development plans have been approved by the Commission and the Commission has issued its certificate of convenience and necessity as provided in the act." The plaintiff contended that since the Neighborhood Redevelopment Corporation Law

did not provide for notice to the property owners of the application for a certificate of convenience and necessity, the act was invalid. Other provisions in the act were also attacked. Judgment was entered holding the act invalid and enjoining the defendants from using any public funds in carrying out its provisions. The judgment was reversed on appeal and the Court, with respect to lack of notice complained of by the property owners, said: "It is argued that the failure of the act to provide for actual notice of such hearing to the property owners constitutes a denial of due process of law. It should be kept in mind that this hearing is merely an application for a certificate of convenience and necessity. . . . It is argued that when the commission issued its certificate of convenience and necessity, this authorizes the corporation to proceed with the project and to acquire the property located within the development area by eminent domain. It is obvious, however, that no property or property interests are to be taken or interfered with on this hearing. It is simply one of the steps prescribed by the act in the chain of events authorizing the redevelopment corporation to proceed with the development and to acquire property by voluntary conveyance and by eminent domain for that purpose."

It appears from the record in this proceeding that the Utilities Commission found the facts, upon which it issued the certificate of public convenience and necessity, from the duly verified petition of the Housing Authority of the City of Charlotte, and from representations of counsel for the petitioner. By consent of counsel for all parties the petition of the Housing Authority of the City of Charlotte was not made a part of the record. However, the findings of fact and conclusions of law are set out in the order of the Commission, and they are sufficient to support the order. Among other things, the Commission found that the City of Charlotte, after having made due investigation, found and determined that there exists in the City of Charlotte a need for an additional 600 units of decent, safe and sanitary low-rent dwellings, and adopted a resolution to that effect in a regular meeting on 21 December, 1949; and that the City of Charlotte had entered into a co-operative agreement with the Housing Authority of the City of Charlotte, as required by the Public Housing Administration. And since the evidence upon which the Utilities Commission made its findings of fact is not brought forward, it will be presumed that there was competent evidence to support its findings, *Carter v. Carter*, 232 N.C. 614, 61 S.E. 2d 711; *Hughes v. Oliver*, 228 N.C. 680, 47 S.E. 2d 6; *Roach v. Pritchett*, 228 N.C. 747, 47 S.E. 2d 20; *Radeker v. Royal Pines Park, Inc.*, 207 N.C. 209, 176 S.E. 285; and the order of the Utilities Commission granting the certificate of public convenience and necessity may not be attacked in this proceeding.

In our opinion the record supports the view that the petitioner herein complied with the preliminary requirements of the Housing Authorities Law prior to the institution of the proceeding for the condemnation of the respondents' parcels of land. And since it is conceded that the notices required by the Public Works Eminent Domain Law, G.S. 40-36, have been given in accordance with the provisions of the statute, the judgment dismissing the proceeding should be reversed.

### RESPONDENTS' APPEAL.

We have in effect heretofore considered and passed upon all but two of the exceptions entered by the respondents to the court's conclusions of law, made in the hearing below, in our consideration of the petitioner's appeal.

The respondents excepted to and assign as error the ruling of the court below to the effect that the right of eminent domain provided for in G.S. 40-30 to 40-53, inclusive, may be exercised for the purpose of constructing low-rent dwellings despite the fact that the area sought to be condemned may not be a slum area.

In the selection of a location for a housing project as authorized under the Housing Authorities Law, the project may be built either in a slum area which has been cleared, or upon other suitable site. The housing authority is given wide discretion in the selection and location of a site for such project. *Housing Authority v. Higginbotham,* 135 Texas 158, 143 S.W. 2d 79, 130 A.L.R. 1053; *Riggin v. Dockweiler,* 15 Cal. 2d 651, 104 P. 2d 367; *Chapman v. Huntington W. Va. Housing Authority,* 121 W. Va. 319, 3 S.E. 2d 502; *Stockus v. Boston Housing Authority,* 304 Mass. 507, 24 N.E. 2d 333; *Housing Authority of the City of Oakland v. Forbes,* 51 Cal. A. 2d 1, 124 P. 2d 194. And the fact that a few isolated properties in an area may be taken and dismantled which are above the standard of slum properties, or that some few desirable homes will be taken, will not affect the public character of the condemnation proceeding. *Blakemore v. Cincinnati Metropolitan Housing Authority,* 74 Ohio App. 5, 57 N.E. 2d 397; *In re Edward J. Jeffries Home Housing Project of Detroit,* 306 Mich. 638, 11 N.W. 2d 272.

The respondents also except to the ruling of the court below to the effect that G.S. 40-10 does not apply to this proceeding, and that the Housing Authority of the City of Charlotte may condemn, without the consent of the owners, their dwelling houses, yards, kitchens, gardens, or burial grounds.

We concur in the ruling of the court below. The Housing Authorities Law expressly gives the housing authority, created pursuant to the act, the power to obtain by eminent domain any real property, including the

improvements and fixtures thereon, which it may deem necessary for the construction of a housing project.  G.S. 157-11 and 157-50.

All the exceptions of the respondents to the court's conclusions of law are hereby overruled, and the judgment from which the petitioner appeals is reversed and remanded for further proceedings in accord with this opinion.

Reversed and remanded.

BARNHILL and ERVIN, JJ., dissent.