Middleton, J.
The constitutional question raised is stated by the plaintiff-appellant as follows:
“1. Is the use of land by a metropolitan housing authority for the erection and operation of a multiple-unit housing project, occupation of which is restricted to persons of a certain minimum income, a public use?
“2. Is G. C. 1078-34a which purports to authorize appropriation of private property for such use by a metropolitan housing authority violative of Article I, Section 19 of the Ohio Constitution?”
The defendant-appellee asserts that the above statement of the issue is incomplete in that it fails to include the fact that slum elimination is an integral and necessary element in the housing project, and that slum elimination is required both under defendant’s *198 contract with the city and under its contract with the Public Housing Administration.
The plaintiff and defendant agree that a second question is raised, to wit: May such appropriation be had even though the land is not presently appropriately zoned but where the housing authority has a contract with the city of Youngstown by which the city agrees to rezone the site to permit said construction?
The plaintiff states that the constitutionality of the Ohio Housing Authority Law as a whole is not challenged in this proceeding. It does specifically challenge the constitutionality of the provisions of Section 1078-34a, General Code (Section 3735.32, Revised Code), which are:
“A housing authority shall have special power to appropriate, enter upon and hold real estate within its territorial limits, and such authority is hereby authorized to acquire the fee simple title, or a lesser interest, as it may elect, in any property within its territorial limits which it shall deem necessary to appropriate for the purposes of the housing authority. * * * ”
The “purposes” of the housing authority were defined by Section 1078-34, General Code (Section 3735.31, Revised Code), as follows:
“An authority created under this act shall constitute a body corporate and politic, and for the purposes of (1) clearing, planning and rebuilding slum areas within the district wherein the authority is created, or (2) providing safe and sanitary housing accommodations to families of low income within such district or (3) accomplishing a combination of the foregoing, shall have the following powers in addition to others herein specifically granted * * *.”
The plaintiff urges as a major proposition in support of its position that the land here being condemned is in no sense a slum or blighted area, and it asserts, therefore, that the whole purpose of the appropriation *199 is the erection of a low-rent housing project on that land.
Our first task is to construe Section 19, Article I of the Constitution of Ohio, which reads:
“Private property shall ever be held inviolate but subservient to the public welfare. * * * where private property shall be taken for public use, a compensation therefor shall first be made in money, or first secured by deposit of money; and such compensation shall be assessed by a jury, without deduction for benefits to any property of the owner.”
It is to be noted at the outset that the present proceeding does not involve the question of exemption from taxation.
Although exclusive public use may be required for tax exemption, exclusive public use is not always required as a condition to the exercise of the right of eminent domain. Subserviency to public welfare is a broader restriction upon private rights in property than subserviency to actual use by the public.
The low-rent housing project in question is coupled with slum elimination. Slum elimination is required by the Public Housing Authority, which is the federal agency, and that requirement is included in the annual contributions contract. The city of Youngstown has entered into the “co-operation agreement” in which it agrees to eliminate buildings (described in such terms as to satisfy the definition of slums) substantially equal in number to the newly constructed dwellings. It is, therefore, manifest that low-rent housing and slum clearance are both essential elements of the project. Is such project conducive to the public welfare? If so, is the land so taken to be used for a public purpose?
These are essentially the same questions as were raised, discussed and decided in the case of State, ex rel. Bruestle, City Solicitor, v. Rich, Mayor, 159 Ohio *200 St., 13, 110 N. E. (2d), 778, in which the Urban Redevelopment Act was under consideration. The fifth paragraph of the syllabus of that case reads:
“The elimination of slum and other conditions of blight and provisions against their recurrence are ordinarily conducive to ‘the public welfare’ as those words are used in Section 19 of Article I of the Ohio Constitution. ’ ’
The second paragraph of the syllabus reads:
“Under Section 19 of Article I of the Ohio Constitution property taken for ‘the public welfare’ is regarded as property ‘taken for public use.’ ”
Based upon the reasoning of the Rich case, we hold that the construction of-low-rent housing units coupled with slum elimination is conducive to public welfare and is a public use of land such as satisfies the constitutional protection of Section 19 of Article I of the Ohio Constitution.
It follows that the provisions of Sections 1078-29 to 1078-49o, General Code (Sections 3735.27 to 3735.50, Revised Code), do not controvert the Constitution so far as they authorize the exercise of the rights of eminent domain by the housing authority for the construction of such project.
Must the low-rent housing units be located in a cleared slum area? Although the plaintiff vigorously urges an affirmative answer to this question, court decisions supporting such position are not presented. We find no such requirement in the statutes. As indicating absence of such legal requirement, we recognize the well established principle that broad discretion is vested in administrative bodies and local authorities. See State, ex rel. Gordon, City Atty., v. Rhodes, Mayor, 158 Ohio St., 129, 107 N. E. (2d), 206, and authorities cited therein.
Many reasons are advanced which might influence the housing authority to erect the low-rent housing units elsewhere than in the area of the slum which *201 is being eliminated. It is unnecessary to discuss them. It is sufficient to repeat the following statement found in the opinion in the ease of State, ex rel. Ellis, City Solicitor, v. Sherrill, City Manager, 136 Ohio St., 328, 331, 25 N. E. (2d), 844:
“Naturally, in the execution of such a program a great deal must be left to the discretion and sound judgment of the local authorities, appointed in compliance with the state law. When it appears that such judgment and discretion is being reasonably exercised within lawful limits, no basis is afforded for judicial intervention.
“An examination of the evidence presented in the pending case shows on the whole a carefully conceived and balanced plan to abolish selected slum areas in the city of Cincinnati and to provide low-rent dwelling units within the municipal limits for families of low incomes, in general conformity with the purpose and design of the controlling legislation.
“If a plan as formulated by a local authority comes within the purview of the housing act and meets the approval of the National Housing Authority, whereby it is willing to lend federal funds in furtherance thereof, a court may not interfere.”
No basis is here afforded for judicial intervention with respect to the decision of the housing authority, reached in the exercise of its discretion, as to the location of the low-rent housing units.
It may be observed further that this precise question has been considered by courts of other states in construing statutes similar to the Ohio Housing Authority Law. Among such decisions are:
Riggin v. Dockweiler, 15 Cal. (2d), 651, 104 P. (2d), 367, where the Supreme Court of California said:
“But the statute contains no provisions making it imperative that a new housing project be located in a slum area. On the contrary, the Legislature has commanded: ‘In the planning and location of any *202 housing project, an authority shall take into consideration the relationship of the project to any larger plan or long-range program for the development of the area in which the housing authority functions.’
“In working out the problem of low-cost housing, it may appear that the clearance of a slum area is desirable because the dwellings in use are insanitary, or present fire hazards or are maintained under such conditions that their removal would be in the interest of the public welfare. Also, the location may be an undesirable one for dwellings. Where such circumstances exist, it would be folly to require the new buildings to be constructed at the old location, and compel the new units to be crowded into the space taken up by those cleared away. Such an interpretation of the housing act would thwart the very purposes for which it was passed and effectively block slum clearance in districts where the problem is most acute.
“No such result is contemplated. Under the terms of the federal and state statutes, a housing project may be built in any location deemed desirable by those charged with their administration. The legislation was enacted to provide for low-cost housing incidental to slum clearance, but with no requirement that the new structures be confined to slum areas.”
In re Housing Authority of City of Charlotte, 233 N. C., 649, 660, 65 S. E. (2d), 761, 769, where the Supreme Court of North Carolina said:
“In the selection of a location for a housing project as authorized under the Housing Authorities Law, the project may be built either in a slum area which has been cleared, or upon other suitable site. The housing authority is given wide discretion in the selection and location of a site for such project.”
Consistent with the foregoing are the decisions in Housing Authority of City of Dallas v. Higginbotham, 135 Tex., 158, 143 S. W. (2d), 79, 130 A. L. R., 1053; Chapman v, Huntington Housing Authority, 121 W. *203 Va., 319, 3 S. E. (2d), 502; and Stockus v. Boston Housing Authority, 304 Mass., 507, 24 N. E. (2d), 333.
Remaining to be considered is the problem of necessary changes in city zoning. The area in question is zoned as “residential A,” which permits only single-family residences. To permit construction of the proposed units, rezoning is necessary. The city has agreed, as above stated, to effect the necessary rezoning. The enforceability of that agreement has not been effectively challenged. Youngstown is a charter city but its charter was not placed in evidence. Aside from such powers as may be vested in it as a charter city and subject to any limitations of power which may be contained in its charter, the power of the city to make such agreement is clearly granted by the provisions of Sections 1078-52 and 1078-53, General Code (Sections 3735.51 and 3735.52, Revised Code).
Section 1078-52 included “city” within the term, “state public body.”
Section 1078-53 provided:
“For the purpose of aiding and co-operating in the planning, undertaking, construction or operation of housing projects located within the area in which it is authorized to act, any state public body may upon such terms, with or without consideration, as it may determine:
i i * # #
“d. Plan or replan, zone or rezone any part of such state public body, make exceptions from building regulations and ordinances;
■ “e. Enter into agreements (which may extend over any period, notwithstanding any provision or rule of law to the contrary) with a housing authority or the federal government respecting action to be taken by such state public body pursuant to any of the powers herein granted * *
In view of that agreement, we do not believe that the necessity for rezoning would prevent or invalidate *204 the appropriation proceeding. We, however, agree with the trial court and the Court of Appeals that consummation of the appropriation by payment and taking possession by the housing authority should be postponed until the city has fulfilled its obligation to rezone as necessary.
The judgment of the Court of Appeals is affirmed.

Judgment affirmed.

Weygandt, C. J., Hart, Zimmerman and Stewart, JJ., concur.
Taft, J., concurs in paragraphs one and two of the syllabus and in the judgment.
Matthias. J., not participating.