HOUSING AUTHORITY OF THE CITY OF WILSON v. W. L. WOOTEN AND WIFE, MAUDE H. WOOTEN; O. WAYNE YELVERTON AND WIFE, VIVIAN S. YELVERTON; CITY OF WILSON; WILSON COUNTY.

(Filed 15 June 1962.)

1. **Municipal Corporations § 4; Eminent Domain § 7c—**
   Allegations of facts upon which respondents assert the legal conclusions

that petitioner housing authority's act in selecting respondents' land for a low-rent housing project was arbitrary and capricious, amounting to a manifest abuse of discretion, *is held* to constitute a plea in bar to petitioner's right to condemn respondents' land.

**2. Same;   Appeal and Error § 3—**

In a proceeding by a housing authority to condemn respondents' land, motion of the housing authority to strike in their entirety allegations in the answer setting up a plea in bar that the housing authority acted capriciously or arbitrarily in selecting respondents' land for the site of the housing project, is in effect a demurrer to the plea in bar, and order allowing the motion is appealable, Rule of Practice in the Supreme Court No. 4(a) not being applicable.

**3. Municipal Corporations § 4;   Eminent Domain § 7c—**

A housing authority is given wide discretionary power in the selection of a site for a low-rent housing project and is not required to select as a site a slum area.

**4. Same—   Allegations held insufficient predicate for conclusion that housing authority acted arbitrarily in selecting site for project.**

In an action to condemn land for a low-rent housing project, respondents' allegations to the effect that 90 per cent of the property within the area selected for the site consists of cleared land, that the few houses therein are not slum houses, that the boundaries of the project were drawn adjacent to, but excluded areas that are congested slum areas, that suitable sites existed in the city for such housing project, and that other sites within the city which had been selected by the housing authority for other projects were subject to like objections, *held* not to support respondents' inferences and conclusions of law that the selection of respondents' land for the site was arbitrary or capricious, amounting to abuse of discretion, and therefore petitioner's motion to strike such allegations was properly allowed.

**5. Public Officers § 8—**

There is a presumption that public officials have discharged their duties in good faith consonant with the spirit and purpose of the law.

SHARP, J., took no part in the consideration or decision of this case.

APPEAL by respondents W. L. Wooten and wife, Maude H. Wooten, O. Wayne Yelverton and wife, Vivian S. Yelverton, from *Copeland, S.J.*, September 1961 Civil Term of WILSON.

Special proceeding by Housing Authority of the City of Wilson, pursuant to the provisions of G.S., Chapter 157, Article 1 (Housing Authorities Law), and of G.S., Chapter 40, Article 2 (Condemnation Proceedings), to condemn a tract of land in the city of Wilson owned by W. L. Wooten and O. Wayne Yelverton for the erection of a low-rent housing project for persons of small incomes, heard below on an appeal from an order of the clerk of the superior court of Wilson

County striking in their entirety Sections 1, 3, 6, 7, 8, 9, and 10 from the further answer and defense of respondents contained in their amended answer to the petition.

The petition alleges in substance:

Four hundred safe, sanitary dwelling units are needed in the city of Wilson for rental to persons of low incomes. Petitioner, acting in good faith, is engaged in the development of Housing Projects Nos. N. C. 20-1 and N. C. 20-2 in the city of Wilson in order to erect the needed dwelling units. A tract of land in the city of Wilson owned by respondents is located within the area of its Housing Project No. N. C. 20-2, and this tract of land, with other adjacent, adjoining, and nearby land, is required and is necessary for the development of its Project No. N. C. 20-2, which is in the public interest. A description of respondents' tract of land by metes and bounds is attached to the petition, and made a part thereof. The locations of land selected by petitioner for the above projects have been approved by the city of Wilson and by the Utilities Commission of the State. The Utilities Commission, after a public hearing, has issued its Certificate of Public Convenience and Necessity for its projects, a copy of which is attached to the petition, and made a part thereof. Petitioner has attempted to acquire title to respondents' tract of land necessary for the development of its Project No. N. C. 20-2 by negotiations in good faith, but has been unable to do so, because it and respondents have been unable to agree as to the value of respondents' tract of land. Wherefore, petitioner prays that the court appoint three freeholders to appraise the value of respondents' tract of land, and render judgment that a fee simple title to the land be vested in it.

Respondents filed an answer, which contains a further answer and defense, and a cross-action and counterclaim. Upon motion of petitioner, the clerk of the superior court of Wilson County struck out a large part of respondents' further answer and defense and of their cross-action and counterclaim, and allowed them ten days to file an amendment to their answer.

Respondents filed an amended answer. In their answer they admit petitioner is a municipal corporation organized and existing under the Housing Authorities Law of the State, and that it has selected certain sites in the city of Wilson for its projects. They further admit that this proceeding is prosecuted under the appropriate State statutes, but they deny that the proceeding is prosecuted in good faith, for the action of petitioner in seeking to condemn their land is arbitrary, capricious and unreasonable.

And for a further answer and defense, they allege in substance:

1. The property of respondents, and in fact more than 90% of the property within the area selected for this housing project site, consist of cleared land, and the few houses within the area are not slum houses. The boundary lines of this project were drawn adjacent to, but excluding areas that are the most congested slum areas in the city of Wilson. The action of the Housing Authority in selecting their land for condemnation is arbitrary, capricious, and unreasonable, in that their land is not a slum area in the city of Wilson.

2. To secure a Certificate of Public Convenience and Necessity the Housing Authority was required to show the existence of insanitary dwellings in the city of Wilson. A survey in certain portions of the city disclosed more than 1200 unsafe dwellings.

3. The survey did not include their land, which does not have on it any unsafe dwelling.

4. In the hearing before the Utilities Commission the Housing Authority showed exhibits of the slum areas in the city, and produced evidence of the existence of unsafe dwellings in the city.

5. As a result of the hearing the Utilities Commission issued its Certificate of Public Convenience and Necessity for removing these blighted areas from the city, and for providing safe and sanitary dwellings for the occupants of the dilapidated houses in the city.

6. The refusal of the Housing Authority to remove these slum areas is unreasonable, arbitrary, and capricious, in that their property selected for condemnation has no dilapidated buildings on it, and is cleared land.

7. The action of the Housing Authority in seeking to condemn their land and other land in this project is not for a public purpose, in that it intends to construct private dwelling units for private individuals, and to locate the same immediately adjacent to slum areas. The public will not benefit from the construction of dwelling units on cleared land, because of the existence of over 1200 dilapidated dwellings within this project area and other areas of the city.

8. The Housing Authority has other suitable sites in the city where it can construct dwelling units, for instance, where the survey disclosed over 1200 dilapidated dwellings, which are adjacent to and on all sides of it projects. A selection of such sites would benefit the residents of the city and fulfill the purpose of the Housing Authorities Act.

9. The action of the Housing Authority in selecting and seeking to condemn their property is arbitrary, capricious, fraudulent, and unreasonable in that:

a. More than 90% of the area selected for the project site is cleared land, and the few houses in it are not slum houses.

b. The first housing project selected and purchased by petitioner, and on which the erection of rental units has commenced, consists entirely of about 25 acres of cleared land on which there was no building. This first project is surrounded on at least two sides by modern middle-class subdivision developments, which in a short time would have become a subdivision for privately-owned new homes by white persons of low and middle-class incomes. On one side of this first project area is one of the worst slum areas in the city.

c. The Housing Authority has selected a third site, and has requested the city planning board to approve it as a site for a third project, which site is a cleared field outside of the city limits and adjacent to a slum area.

d. The entire plan and scheme of the Housing Authority is not of eliminating slum dwellings in the city, but of engaging in the private enterprise of rental units.

10. The action of the Housing Authority is arbitrary and capricious, and seeks to perpetrate a fraud upon the residents of the city because the public was led to believe a public housing development would rid the city of its dilapidated buildings. But the Housing Authority in seeking their land does not contemplate the removal of any of these dilapidated buildings, in that it is seeking to obtain cleared land to save the expense of removing these dilapidated buildings. That such conduct is not in the public interest, and is arbitrary and capricious.

11. Respondents demand a jury trial upon all issues of facts raised by the pleadings.

On 5 December 1960 petitioner made a motion before the clerk of the superior court to strike from the further answer and defense of the amended answer, Sections 1, 3, 6, 7, 8, 9, and 10.

On 4 January 1961 the clerk of the superior court appointed three freeholders to appraise the value of respondents' land which petitioner seeks to condemn in this proceeding. The three freeholders filed their report with the clerk on 26 January 1961 finding the fair market value of the land was $2,100.00. Within apt time respondents filed exceptions to their report. On 17 August 1961 the clerk entered an order overruling respondents' exceptions to the report, and confirming it. On the same day respondents appealed from the clerk's order to the superior court, and demanded a jury trial.

On 23 August 1961 the clerk entered an order allowing in its entirety petitioner's motion to strike above set forth. On the same day respondents excepted, and appealed to the superior court.

On 27 August 1961 Judge Copeland entered an order affirming the clerk's order allowing petitioner's motion to strike.

From Judge Copeland's order, respondents appeal to the Supreme Court.

*Finch, Narron, Holdford & Holdford by Roy R. Holdford, Jr., for respondent appellants.*
*Lucas, Rand & Rose by Naomi E. Morris for petitioner appellee.*

PARKER, J.　The basis of the Housing Authority's motion to strike Sections 1, 3, 6, 7, 8, 9, and 10 from respondents' further answer and defense contained in their amended answer is that the facts therein alleged constitute no legal defense to its special proceeding to condemn respondents' land. The stricken allegations are in substance a plea in bar that denies the Housing Authority's right to condemn their land, and which, if established, will destroy its right. *Mercer v. Hilliard,* 249 N.C. 725, 107 S.E. 2d 554; *In re Housing Authority of the City of Salisbury,* 235 N.C. 463, 70 S.E. 2d 500. In substance and in effect, but not in form, the Housing Authority's motion to strike is a demurrer to what is in substance a plea in bar. Such being the case, Judge Copeland's order affirming the clerk's order allowing the Housing Authority's motion to strike in its entirety affects a substantial right of respondents, and they may appeal therefrom, and Rule 4(a), Rules of Practice in the Supreme Court, 254 N.C. 783, 785, is not applicable. · G.S. 1-277; *Mercer v. Hilliard, supra.*

Respondents state in their brief: "Respondents contend that by their further answer and defense they have alleged facts which show the Housing Authority of the City of Wilson has acted in bad faith in the selection of a site or sites for its housing projects."

This Court said in *In re Housing Authority of the City of Charlotte,* 233 N.C. 649, 660, 65 S.E. 2d 761, 769:

"In the selection of a location for a housing project as authorized under the Housing Authorities Law, the project may be built either in a slum area which has been cleared, or upon other suitable site. The housing authority is given wide discretion in the selection and location of a site for such project. *Housing Authority v. Higginbotham,* 135 Texas 158, 143 S.W. 2d 79, 130 A.L.R. 1053; *Riggin v. Dockweiler,* 15 Cal. 2d 651, 104 P. 2d 367; *Chapman v. Huntington W. Va. Housing Authority,* 121 W. Va. 319, 3 S.E. 2d 502; *Stockus v. Boston Housing Authority,* 304 Mass. 507, 24 N.E. 2d 333; *Housing Authority of the City of Oakland v. Forbes,* 51 Cal. A. 2d 1, 124 P. 2d 194. And the fact that a few isolated properties in an area may be taken and dismantled which are above the standard of slum properties, or that some few desirable homes will be taken, will not affect the public character of the condemnation proceeding. *Blakemore v. Cincinnati Metropolitan Housing Authority,* 74 Ohio App. 5, 57 N.E. 2d 397; *In re Edward*

*J. Jeffries Home Housing Project of Detroit,* 306 Mich. 638, 11 N.W. 2d 272."

An examination of the cases cited by this Court shows that they support this Court's statement of law. To the same effect are the following cases: *David Jeffrey Co. v. City of Milwaukee,* 267 Wis. 559, 66 N.W. 2d 362 (1954); *State v. Rich,* 159 Ohio St. 13, 110 N.E. 2d 778 (1953), which cites our case of *In re Housing Authority of the City of Charlotte, supra; Ferch v. Housing Authority of Cass County,* 79 N.D. 764, 59 N.W. 2d 849 (1953); *Scheuer v. Housing Authority of City of Cartersville,* 214 Ga. 842, 108 S.E. 2d 264 (1959); *Carroll v. City of Camden,* 34 N.J. 575, 170 A. 2d 417 (1961).

In *Ferch v. Housing Authority of Cass County, supra,* the Supreme Court of North Dakota said:

"The plaintiff complains that the condemnation of land for new housing outside the slum area as in the instant case could not be held to be for a public purpose and therefore violates said sections of the state and federal Constitutions. If that were so, the purpose of the Act would in many instances be thwarted. There may be many reasons why the new project should not be built in the slum area, such as the topography, drainage and lack of space. In the case of *Chapman v. Huntington Housing Authority,* 121 W. Va. 319, 3 S.E. 2d 502, 509, the court says:

" 'The projects may be built in any area within the exercise of sound discretion of the federal and state authorities and the council of the City of Huntington, whether slum or not slum. They are simply low-cost-housing projects, incidental to slum clearance. In some cities it is quite conceivable that slums exist in low-water areas. Equally, it is quite inconceivable that public moneys in large amounts should be expended to build modern dwelling units where they will be subject to and endangered by rising waters.'

"In *Riggin v. Dockweiler,* 15 Cal. 2d 651, 104 P. 2d 367, the court said:

" 'In working out the problem of low-cost housing, it may appear that the clearance of a slum area is desirable because the dwellings in use are insanitary, or present fire hazards or are maintained under such conditions that their removal would be in the interest of the public welfare. Also, the location may be an undesirable one for dwellings. Where such circumstances exist, it would be folly to require the new buildings to be constructed at the old location, and compel the new units to be crowded into the space taken up by those cleared away. Such an interpretation of the

housing act would thwart the very purposes for which it was passed and effectively block slum clearance in districts where the problem is most acute.' See also *Thomas v. Housing & Redevelopment Authority,* 234 Minn. 221, 48 N.W. 2d 175, 188; *Keyes v. United States,* 73 App. D.C. 273, 119 F. 2d 444, Id., 314 U.S. 636, 62 S. Ct. 70, 86 L. Ed. 510."

In *In re Housing Authority of the City of Salisbury, supra,* this Court said:

"In determining what property is necessary for a public housing site, a broad discretion is vested by statute in housing authority commissioners, to whom the power of eminent domain is delegated. G.S. 157-11; G.S. 157-50; G.S. 40-37.

"Indeed, so extensive is this discretionary power of housing commissioners that ordinarily the selection of a project site may become an issuable question, determinable by the court, on nothing short of allegations charging arbitrary or capricious conduct amounting to abuse of discretion. See *Power Co. v. Wissler,* 160 N.C. 269, 76 S.E. 267; *Pue v. Hood, Comr. of Banks,* 222 N.C. 310, p. 315, 22 S.E. 2d 896. However, allegations charging malice, fraud, or bad faith in the selection of a housing project site are not essential to confer the right of judicial review. It suffices to allege and show abuse of discretion. The distinction here drawn is not at variance with the decision reached in *In re Housing Authority of the City of Charlotte,* 233 N.C. 649 (headnote 2), 65 S.E. 2d 761 (headnote 4)."

This is the question for decision: Admitting, for the purpose of passing on the Housing Authority's motion to strike sections 1, 3, 6, 7, 8, 9, and 10 from respondents' further answer and defense contained in their amended answer (which is in substance and effect a demurrer to what is in substance a plea in bar to the Housing Authority's right to condemn respondents' land in this special proceeding), the truth of factual averments well stated, and such legitimate inferences as may be drawn therefrom, but not admitting any legal inferences or conclusions of law asserted by the pleader, were the stricken allegations sufficient to put to the test for judicial review by Judge Copeland, whether the action of the Housing Authority in selecting the area for the site of its Project No. N. C. 20-2 and in including respondents' land therein was arbitrary or capricious amounting to a manifest abuse of the wide discretion vested in it in the selection and location of a site for its Project No. N. C. 20-2? The definition of what in law amounts to "arbitrary" or "capricious" conduct on the part of a Hous-

ing Authority is set forth in *In re Housing Authority of the City of Salisbury, supra.* The answer is, No.

The stricken allegations allege in substance these facts: The property of respondents, and in fact more than 90% of the property within the area selected for the site of Housing Project No. N. C. 20-2, consist of cleared land, and the few houses therein are not slum houses. The boundary lines of this project were drawn adjacent to, but excluding areas that are the most congested slum areas of the city of Wilson. A survey in the city did not include their land. The Housing Authority has other suitable sites in the city where it can construct dwelling units, for instance, where the survey disclosed over 1200 dilapidated buildings which are adjacent to and on all sides of its project. The first housing project selected and purchased by petitioner, and on which the erection of rental units has commenced, consists entirely of about 25 acres of cleared land on which there was no building. On one side of its project is one of the worst slum areas in the city. The Housing Authority has selected a third site, and has requested the city planning board to approve it as a site for a third project, which site is a cleared field outside of the city limits and adjacent to a slum area.

The remainder of the stricken allegations allege inferences of fact, and inferences and conclusions of law, which inferences, in our opinion, are *non sequitur,* and which conclusions of law are not supported by the allegations of fact, for instance: The Housing Authority's selection of their land for condemnation is arbitrary and capricious, because their land is not a slum area in the city of Wilson. The Housing Authority refuses to remove the slum areas, because their property selected for condemnation has no dilapidated buildings on it, and is cleared land. The public will not benefit from the construction of dwelling units on cleared land, because of the existence of over 1200 dilapidated dwellings within the city of Wilson. A selection of sites in the slum area will benefit the residents of the city and fulfill the purpose of the Housing Authorities Act. The entire plan and scheme of the Housing Authority is not to eliminate slum dwellings in the city, but to engage in the private enterprise of rental units. The Housing Authority in seeking their land does not contemplate the removal of any of these dilapidated buildings, because it is seeking to obtain cleared land to save the expense of removing these dilapidated buildings, and such conduct perpetrates a fraud upon the residents of the city of Wilson, and is not in the public interest, and is arbitrary and capricious.

The gravaman of respondents' contention and complaint is that the Housing Authority in selecting its land for condemnation with

other land adjacent to it, which consists of 90% cleared land, instead of picking a slum site for its Project No. N. C. 20-2, acted arbitrarily and capriciously amounting to a manifest abuse of discretion. Upon the record before us the contention is untenable. There is nothing in the law in this jurisdiction that requires housing projects to be located only where slum districts exist. The object of our Housing Authorities Act is to clear slums and to afford cheap housing for low-income people. That object Housing Project No. N. C. 20-2 will accomplish, so far as its dwelling units can, for we indulge the "presumption that public officials will discharge their duties in good faith and exercise their powers in accord with the spirit and purpose of the law." *In re Housing Authority of the City of Charlotte, supra.*

The order of Judge Copeland is
Affirmed.

SHARP, J., took no part in the consideration or decision of this case.